**Chryssoula Arsenis**

**Docket No. 000281-15**

**20 N Bridge St, Somerville, NJ 08876**

**Attorneys for Plaintiff**

COURT
OF NEW JERSEY

2022 MAR 28  A II: 42

**Patricia Lee**
**Connell Foley LLP**
**56 Livingston Avenue**
**Roseland, NJ 07068**
**P 973.535.0500 F 973.535.9217**

## IN THE UNITED STATES DISTRICT COURT FOR
## DISTRICT OF NEWARK, NEW JERSEY

**Horizon Blue Cross**
**Blue Shield of New Jersey,**
**et al.**

**PLAINTIFF,**

     **vs.**

**CASE NO.**
**NOTICE OF FILING NOTICE OF**
**REMOVAL IN THE UNITED STATES**
**DISTRICT COURT FOR THE**
**DISTRICT  OF NEW JERSEY**

**SPEECH & LANGUAGE CENTER, LLC;**
**CHRYSSOULA MARINOS-ARSENIS;**
**JOHN DOES 1-10 and ABC**
**CORPORATIONS 1-10,**

**Defendant.**

### DEFENDANT'S NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, On MARCH 27, 2022 Defendant

CHRYSSOULA ARSENIS filed a Notice of REMOVAL pursuant to

28 U.S. Code § 1331;  28 U.S. Code § 1441; 28 U.S. Code § 1446**(d)**

**Chryssoula Arsenis**

**Docket No. 000281-15**

**20 N Bridge St, Somerville, NJ 08876**

**Attorneys for Plaintiff**

**Patricia Lee**
**Connell Foley LLP**
**56 Livingston Avenue**
**Roseland, NJ 07068**
**P 973.535.0500 F 973.535.9217**

> **IN THE UNITED STATES DISTRICT COURT FOR**
> **DISTRICT OF NEWARK, NEW JERSEY**

**Horizon Blue Cross**
**Blue Shield of New Jersey,**
**et al.**

**PLAINTIFF,**                          **CASE NO.**
                                         **NOTICE OF FILING NOTICE OF**
        **vs.**                          **REMOVAL IN THE UNITED STATES**
                                         **DISTRICT COURT FOR THE**
                                         **DISTRICT  OF NEW JERSEY**

**SPEECH & LANGUAGE CENTER, LLC;**
**CHRYSSOULA MARINOS-ARSENIS;**
**JOHN DOES 1-10 and ABC**
**CORPORATIONS 1-10,**

**Defendant.**

## NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE ENTITLED COURT**

     **PLEASE TAKE NOTICE THAT THE DEFENDANT(S) Chryssoula Marinos –Arsenis and Speech and Language Center, L.L.C.(collectively defendants)Hereby remove to this Court the state action described below.**

**1.On or about 02/11/2015, an action was commenced by Plaintiff in the SOMERSET COUNTY COURTHOUSE 20 N Bridge St, Somerville, NJ 08876 Horizon Blue Cross Blue Shield of New Jersey, et al. vs SPEECH & LANGUAGE CENTER, LLC; CHRYSSOULA MARINOS-ARSENIS;JOHN DOES 1-10 and ABC CORPORATIONS 1-10,**

**2. Defendants' were served with summons on 02/11/2015 and Received a copy of Plaintiff's complaint on 02/11/2015. Pursuant to 28 U.S.C. & 1446(b), this notice has been timely filed. A copy of the process Service of Process, Complaint and Orders served upon Defendants in the state court action are attached here to and referred to collectively as "Exhibit A."**

**3. This action is a civil action of which this district Court has original jurisdiction under 28 U.S.C & 1331 and is one which may be removed to this court by defendants pursuant to the provisions of 28 U.S.C & 1441(b). On the Order of Disposition on August 30, 2019 the parties settled and Trial Judge Miller made all the monetary negotiations, including the total amount and scheduled the increments for every year within a period of four years. It has to be noted all the negotiations cited by Horizon's counsel were between counsel for the parties-the actual party in this litigation was not present during the negotiations among the parties(counsels) and the trial judge Miller did not schedule any status conference with the defendants. The unsigned Term Sheet put on the Record on August 30, 2019 was imposed to the defendant under duress and undue influence just simply "not to piss off the judge", It should be mentioned, as per provision 1(e)" on the Material Term Sheet, the terms and conditions contained shall form the basis of an agreement," denoting that the words on the Term Sheet have not been individually fashioned to address the legal issues(s) presented, therefore, the term sheet is a nonbinding agreement that shows the basic terms and conditions that serve as a template and basis for more detailed, legally binding documents On September 12, 2019 after considerable time lapsed the written settlement Agreement reached Speech and Language Center, L.L.C.**

however, Chryssoula Marinos-Arsenis did not consent to the form
and language of the order submitted by Horizon for execution
because of its offensive language and forced admission of
"Fraud". On September 12, 2019 after considerable lag of time
and in accordance with provision 3© of the Material Term Sheet
which stipulates clearly the followings " The parties shall
negotiate the terms of the Settlement Agreement no later than 10
business days after putting the material term of this Term sheet
on the record with the Law Division". Therefore, the confession
of Judgment and warrant to Confess judgment reached Speech and
Language Center, L.L.C much later than the prescribed 10 days as
per the above provision. It is vehemently denied that the
defendants, arguendo, would have acknowledged on August 30, 2019
any admission of a healthcare fraud conduct. The above is
against the core purpose of any proposed settlement agreement-to
resolve the claims without a finding of "Liability or any
Wrongdoing". Yet, the final settlement agreement the trial court
compelled the defendants to sign on November 15, 2020 and on
January 27,2022 respectively, invalidates this central "Material
Term: thus invalidating the most significant and crucial
Material Term of the parties', the meeting of the minds the "No
admission of liability" as it is the customary and ordinary
intention of every civil settlement agreement. Generally, the
record is not accurate and does not support, Horizon's
entitlement to relief in accordance with the Settlement Material
Term Sheet. Furthermore, quite a few omissions, additions and
ambiguities are noted on the Material Term Sheet. As the
Majority of the New Jersey Supreme Court Justices stated clearly
on November 30, 2021 during the Oral Arguments the Material Term
Sheet is insufficient and the provisions contradict each other.
Notwithstanding any ambiguity with the "Term Sheet" is to be
construed against the party who drafted the Term Sheet, which is
governed by basic contract principles and any novation(change)
without the written change order signed that has incurred, which
denotes an altered and/or a different contract has been
substituted for the old one. Equally Important, Plaintiff cannot
enforce the old Material Term Sheet against the defendants
because on the day of reckoning a written signed change order is
not in place which invalidates the Material Term Sheet. A
proposed form Notice which confirms that a written signed change
order has been promised and in reliance upon the promise to
provide a written signed change order. These conclusions are
supported by the factual record, Horizon, has modified the
Material Term Sheet by canceling the 6(i) provision related to
the bankruptcy code and added a new 6(i) provision with respect
to Common Law Fraud and Insurance Fraud Prevention Act stating,
additionally, Defendants agreed to the language at Section 6(i),

"which provided if defendant, Chryssoula Marinos-Arsenis, filed bankruptcy, "they freely, knowingly, and voluntarily agreed not to contest the allegations in Horizon's underlying complaint in this case, and further agreed that entry of judgment was intended to be for Horizon's claims for both statutory and common law fraud".  As required by Kokkonen vs, Guardian Life Insurance Company of America that is, " there is no incorporation by Implication". Pursuant to Rule 65(d) for injunctive relief describing in reasonable detail the specific conduct to be enjoined and the reason for issuance of an injunction. Conversely, the Law Division did not retain jurisdiction over the Material Term Sheet to enforce it in the original action alleging breach of the Material Term Sheet absent a signed written "Settlement Agreement" The dismissal of August 30, 2019 was final therefore, the court does not have a continuous jurisdiction as per Kokkonen Certourari to the United States Court of Appeal for the Ninth Court No, 93-263 Argued March 1, 1994 Decided May 16, 1994 But the only order on August 30, 2019 was that the matter was dismissed a disposition that is no way flouted or imperiled by the alleged breach of the Material Term Sheet. The obligation to comply with the terms of the Material Term Sheet were not made part of the order of dismissal and no separate provision such as a provision retaining jurisdiction over the Material Term Sheet. In light of the above the Judge's mere awarnesses and approval of the terms of the Material Term Sheet do not suffice to make them part of his order. Like all other contracts when a Material Term Sheet is obtained by Non-disclosed Fraud therefore, Defendants are the injured party and may seek rescission, because of the Material Term Sheet Alteration such as the addition of the 6(I) provision in reference to the common law fraud. To overemphasized the matter, the parties compliance with the Material Term Sheet may, in the "Court's discretion be one of the terms set forth in the order". Absent such action, as retaining continuous jurisdiction over the Material Term Sheet enforcement of the Material Term sheet does not exist after August 30, 2019 The Law Division does not have a continued jurisdiction to enforce it after three(3) years on January 27, 2022(exhibit 1 order of dismissal) civil action ordered of disposition Docket No L-281-15.

Certainly, the court cannot enforce a Material Term Sheet agreement when there is none. A complete signed written agreement has not been authorized by the parties which is necessary to establish a breach of the Material Term Sheet", granted, the Law Division "may not enter a consent Judgment without the actual consent of the parties which is necessary to

establish a breach of the Material Term Sheet Stamato v.
Borough of Lodi 4 N.J. 14, 71A2d 336(1950). per the Federal Rule
41(a)(1). By way of Background, this matter comes before the
court for an order for dismissal because the order of
Disposition on August 30, 2019 Docket No. L-281-15 indicated
that the above matter was dismissed/disposed due to the
following reasons(24)"as Settled-While scheduled for Trial;"
(29) Settled by conference with Judge; and Other Comment. Terms
of Settlement placed on the record under seal on 08/30/2019"
without retaining continuous jurisdiction. The Supreme Court
held that the Law Division has neither ancillary jurisdiction,
non-inherent power to enforce the terms of the Material Term
sheet when it was not mentioned in the order of dismissal and
not such as provision was part of the order and not the judge's
awareness and approval of the terms of the Material Term Sheet
will suffice. Therefore, the comments of the Judge on the
Disposition Order "Terms of the settlement placed on the record
under seal on 08/30/2019" in the dismissal Order are not
sufficient to confer subject matter jurisdiction to Enforce
Litigant's Rights absent the specific provision requesting the
court's continuing jurisdiction to enforce it.
Hence, no effective Court Order retaining jurisdiction has been
entered, therefore, the Court lacks jurisdiction to consider the
motion to enforce the terms of the Material Term Sheet put on
the record on August 30,2019 because the parties did not
condition the effectiveness of the stipulation on the Court's
entry of an order retaining jurisdiction.
Even assuming, the court elected to retain jurisdiction over the
enforcement of the terms of the Material Sheet, the maximum
length of time which a Court may retain jurisdiction greater
than the Law Division Superior Court of New Jersey 60 day local
rule(Local 41.1(b)Federal/State) is acceptable but there is no
indefinite retention of jurisdiction.
In addition to setting forth an explicit retention period of the
Law Division ancillary jurisdiction must had been addressed
within the Terms of the Material Term Sheet. There is no
specific language on the Material Term Sheet on the record on
August 30, 2019 to indicate jurisdiction limited to enforcement
of the Material Term Sheet and nor does include any disputes
relating to the terms. " Federal Rules of Civil Procedure and
federal case law establish that a court is under no obligation
to retain jurisdiction over a unsigned Material Term Sheet and
that even if a court chooses in it discretion to retain
jurisdiction, there is no authority that states that a court
shall exercise jurisdiction indefinitely. Sw. Fiar House Council
Inc vs Maricopa Domestic Water Improvement district.
        WHEREFORE, DEFENDANTs PRAY THAT THIS ACTION BE REMOVED TO

**THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY.**

**DATED: 03/27/2022**

*Chryssoula Marina-Arsenis*

**BY. Chryssoula Arsenis**
**SELF-REPRESENTED LITIGANT**
**65 MOUNTAIN BLVD UNIT 207**
**WARREN NJ 07059**
**732-302-0027**
**Email: speechandlanguage@gmail.com**

## Form C

Name Chryssoula Arsenis

NJ Attorney ID Number (if applicable)
Address 65 Mountain Blvd
Warren NJ, 07059

Telephone Number 7323020027

Superior Court of New Jersey
Law Division
Somerset ▾County

Horizon Blue Cross Blue Shield of NJ                     Docket Number 000281-15
                                    Plaintiff(s)
                    v.                                      **Civil Action**

Speech and Language Center, L.L.C                            **Order**
                                    Defendant(s)            **DENIED**

This matter having been brought before the Court on Motion of (check one) ☐ plaintiff ■ defendant  for an
**Order** (describe relief requested)
Motion breach of contract(Material Term Sheet)

and the Court having considered the matter and for good cause appearing,

It is on this 18th day of __March__ , 20 22 , **ORDERED** as follows:

The motion to enter Judgment is hereby DENIED; and it is further

ORDERED that a copy of this order shall be served upon all parties within seven (7) days.

## /S/ ROBERT G. WILSON, J.S.C.
### Robert G. Wilson, J.S.C

☒ Opposed
☐ Unopposed

Statement of reasons placed on the record on 3/18/22.

## Form C

Name Chryssoula Arsenis

NJ Attorney ID Number (if applicable) _____
Address  65 Mountain Blvd
         Warren NJ 07059

Telephone Number 732-302-0027

Superior Court of New Jersey
Law Division
Somerset ▼ County

Horizon Blue Cross Blue Shield of NJ
                              Plaintiff(s)

Docket Number SOM-L-000281-15

v.

**Civil Action**

Speech Language/Chryssoula Arsenis
                              Defendant(s)

**Order**

This matter having been brought before the Court on Motion of (check one) ☐ plaintiff ■ defendant for an
**Order** (describe relief requested)
Motion to stay pending appeal


and the Court having considered the matter and for good cause appearing,

It is on this  8th  day of  March    , 20 22  , **ORDERED** as follows:


The motion to stay is hereby DENIED.


## /S/ ROBERT G. WILSON, J.S.C.
## Robert G. Wilson, J.S.C

☒ **Opposed**
☐ **Unopposed**


Statement of reasons placed on the record on 03/07/22.

| | |
|---|---|
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, et al.;<br><br>Plaintiff,<br><br>vs.<br><br>SPEECH & LANGUAGE CENTER, LLC, CHRYSSOULA MARINOS-ARSENIS, JOHN DOES 1-10, and ABC CORPORATIONS 1-10<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET VICINAGE<br><br>Docket No.: SOM-L-281-15<br><br>CIVIL ACTION<br><br>**ORDER ON PLAINTIFF'S MOTION TO ENFORCE LITIGANT'S RIGHTS** |

**THIS MATTER** having been opened to the Court by Connell Foley LLP, attorneys for Plaintiff Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), for an Order enforcing the settlement term sheet that Defendants acknowledged on the record before the Court on August 30, 2019 ("Term Sheet"), together with attorneys' fees incurred in filing this motion; and the Court having considered the moving papers in support of and in opposition thereto, if any, and for good cause shown;

**IT IS ON THIS** 27th day of January , 2022:

**ORDERED** that Horizon's Motion to Enforce Litigant's Rights is hereby **GRANTED**;

**ORDERED** that the judgment amount is to be entered in an amount to be determined after the court determines the issue of attorney's fees;

**ORDERED** that within thirty (30) days of the date of this Order, Horizon's counsel shall submit a certification in support of a requested award of counsel fees alleged to be incurred as a result of the drafting and filing of this motion, the motion previously granted in 2019, and all

6246606-1

necessary correspondence and appearances regarding the entry and enforcement of the settlement agreement; and it is further

**ORDERED** that Defendant shall have thirty (30) days to respond to plaintiff's certification; and it is further

**ORDERED** that Plaintiff shall have fourteen (14) days to reply to defendant's response; and it is further

**IT IS FURTHER ORDERED** that a copy of this Order shall be served upon all counsel of record within seven (7) days of the date of this Order.

## /S/ ROBERT G. WILSON, J.S.C.

Hon. Robert G. Wilson, J.S.C.

Statement of reasons placed on the record on 1/25/22.

2

**Exhibit A**

Aetna & Horizon(health insurance Companies jointly)filed a
a complaint allegedly searching for damages under Counts I, II,
III, IV, V, VI and related claims for a hypothetical amount of
$6.6 million which does not reconcile with the 1099 tax
forms sent to Speech and Language Center, L.L.C by both
Insurances  Second Aetna's negotiated
contract with Speech and Language Center, L.L.C did not have the
provision of suing them in the Superior Court but their dispute
had to be resolved through arbitration. Thus, Horizon continued
the litigation without however, never formally amending the
original complaint the amount of claimed damages to $6.6 million
and eliminating the massive counts from the complaint and
alleged patients' names. In Accordance with the data, Horizon's
claims amount to $140,000.00.



FILED

FEB 1 1 2015

~~CHANCERY CHAMBERS~~
~~SOM/HNT/WRN~~

**PREPARED BY THE COURT**

| | |
|---|---|
| SPEECH & LANGUAGE CENTER, LLC, <br> And CHRYSSOULA MARINOS-ARSENIS, <br><br>              Plaintiff(s), <br><br>    vs. <br><br> HORIZON BLUE CROSS BLUE SHIELD <br> OF NEW JERSEY, <br><br>             Defendant(s), | SUPERIOR COURT OF NEW JERSEY <br> SOMERSET/HUNTERDON/WARREN COUNTY <br> CHANCERY DIVISION-GENERAL EQUITY <br> DOCKET No.: SOM-C-12006-15 <br><br><br>             **ORDER** |

THIS MATTER having been brought before the Court by Mazie Slater Katz & Freeman, LLC,

attorneys for plaintiffs, Speech & Language Center and Chryssoula Marinos-Arsenis, and this matter

having been reviewed by the Chancery Presiding Judge;

IT IS **on this** 11ᵗʰ day of February, 2015;

**ORDERED** that this matter is hereby transferred to Somerset County Law Division; and

**IT IS FURTHER ORDERED** that a copy of this Order be served upon all counsel within 7

days of receipt of said Order.

_____
HON. EDWARD M. COLEMAN, P.J.Ch.

Edward S. Wardell, Esquire (017181976)
Thomas Vecchio, Esquire (042192004)
Olivia F. Cleaver, Esquire (025532005)
CONNELL FOLEY LLP
457 Haddonfield Road, Suite 230
Cherry Hill, New Jersey 08002
(856) 317-7100

*Attorneys for Plaintiffs,*
*Aetna Health Inc., Aetna Life Insurance Company*
*and Horizon Blue Cross Blue Shield of New Jersey*



| AETNA HEALTH INC.; AETNA LIFE INSURANCE COMPANY; and HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY | SUPERIOR COURT OF NEW JERSEY LAW DIVISION / CAMDEN COUNTY |
|---|---|
| Plaintiffs, | DOCKET NO.: CAM-L- $35\,2\,7$-$14$ |
| v. | |
| SPEECH & LANGUAGE CENTER, LLC; CHRYSSOULA MARINOS-ARSENIS; JOHN DOES 1-10; and ABC CORPS. 1-10. | Civil Action |
| Defendants. | **COMPLAINT** |

Plaintiffs Aetna Health Inc., Aetna Life Insurance Company and Horizon Blue Cross Blue

Shield of New Jersey (collectively "Plaintiffs"), file the following Complaint against Defendants

Speech & Language Center, LLC ("Speech & Language"), Chryssoula Marinos-Arsenis, John Does

1-10 and ABC Corporations 1-10 (collectively "Defendants"), and state:

## I.    INTRODUCTION

1.      Plaintiffs bring this action to recover in excess of $6,600,000 in damages they have

suffered since 2009 as a result of the Defendants' scheme to submit false and fraudulent insurance

claims to Plaintiffs for speech testing and therapy services.

3187239-1

2.     At a time when state and federal governments, private employers and consumers struggle with the escalating cost of healthcare and the delivery of affordable care to the public, Defendants, for their own financial gain, engaged in a scheme to defraud Plaintiffs and their subscribers by submitting health insurance claims which misrepresented Defendants' charges, the services provided and the patients' diagnoses, failed to disclose material information, and included charges for services not rendered, all in violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, et seq., the laws and regulations which govern the practice of medicine in New Jersey, and the common law of this State. This type of fraud inflates health care costs to Plaintiffs and to all of their ratepayors and undermines the fair, efficient and lawful delivery of health care services to all consumers in New Jersey.

3.     Defendant Chryssoula Marinos-Arsenis is a speech pathologist and therapist who owns and operates the Defendant Speech & Language which is engaged in a pattern of fraud and abuse against Plaintiffs, the health benefit plans they insure or administer, and the beneficiaries of those plans and the public.

4.     Defendants routinely submit claims to Plaintiffs for a full range of diagnostic and therapeutic services -- which, if actually performed, would take at least two and one-half hours (2.5) and could take up to five and one-half (5.5) hours to render -- for an average of approximately twelve (12) patients per date of service notwithstanding any other non-Aetna/non-Horizon patients Defendants also claim to be treating. Despite this, Plaintiffs' members and parents of the Plaintiffs' members that the Defendants treat report that the Defendants' treatment sessions are always one (1) hour and that Defendants do not administer diagnostic tests at each visit.

2

5.    In some instances, Defendants have submitted claims for these services for as many as eighteen (18) of Plaintiffs' members in one day -- which would reasonably equate to Defendants rendering treatment for a minimum of forty-five (45) hours in one day and could be as much as ninety-nine (99) hours in a day or even more.

6.    In addition, Defendants' claims submitted to Plaintiffs suggest that Marinos-Arsenis worked all but one or two days a year and sometimes worked for up to fifteen straight (15) months without a single day off while seeing patients (many of whom are children) on Christmas, Thanksgiving, Easter and New Year's Day.

7.    Defendants' motivation for the scheme is clear. To date, Defendants have collected over $6,600,000 in fees on claims submitted to Plaintiffs which misrepresent the nature of the services provided and for services not actually rendered.

## II.    PARTIES

### A.    The Plaintiffs

8.    Plaintiff Aetna Health Inc. ("Aetna Health") is a New Jersey corporation duly authorized to transact business in this state. At all times material hereto, Aetna Health, among other things, provided health care benefits and insurance to members, and paid health care insurance claims on behalf of its members. Aetna Health actually does business in this county.

9.    Plaintiff Aetna Life Insurance Company ("ALIC") (Aetna Health and ALIC shall hereinafter from time to time be collectively referred do as "Aetna") is a corporation duly authorized to do business in New Jersey with CT Corporation as its registered agent. At all times material hereto, ALIC, among other things, provided health care benefits and insurance to subscribers and

3

3187239-1

insureds, and paid health care insurance claims on behalf of its subscribers and insureds. ALIC actually does business in this county.

10.     Plaintiff Horizon Blue Cross Blue Shield of New Jersey ("Horizon") is a health service corporation in New Jersey duly authorized to do business in New Jersey with its principal place of business at Three Penn Plaza East, Newark, New Jersey 07105. At all times material hereto, Horizon, among other things provided health care benefits and insurance to members and paid health care insurance claims on behalf of its members.

11.     Under the terms of the benefit plans it issues and administers, Aetna and Horizon only pay claims and provide coverage for eligible services provided by eligible providers properly licensed to provide such services under state law.

12.     At all times material hereto, Aetna and Horizon paid health insurance claims to the Defendants in reliance upon and as a result of insurance claims submitted by the Defendants.

13.     Aetna and Horizon are insurers within the meaning of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq. (the "IFPA").

**B.     The Defendants**

14.     Defendant Speech & Language Center, LLC is a corporation existing under the laws of the State of New Jersey with its principal place of business at 65 Mountain Boulevard, Suite 207, Warren, New Jersey 07059. At all times material hereto, Defendant Speech & Language provided diagnostic speech testing and therapy services to individuals who received health benefits and/or health insurance provided by Plaintiffs.

4

3187239-1

15.     Defendant Chryssoula Marinos-Arsenis is an individual residing in the State of New Jersey with a business address of 65 Mountain Boulevard, Suite 207, Warren, New Jersey 07059 and a home address of 380 Claremont Road, Bernardsville, New Jersey. At all times material hereto, Chryssoula Marinos-Arsenis was the sole owner and officer of Defendant Speech & Language. Dr. Marinos-Arsenis is the only licensed speech pathologist/therapist employed by Speech & Language and, as such, is the sole individual providing professional services for which Speech & Language submits claims to Plaintiffs.

16.     Defendants John Does 1-10 are individuals and practitioners who committed, participated in, solicited others to engage in, and knowingly assisted, conspired with or urged others to commit the fraudulent and wrongful acts set forth herein.

17.     Defendants ABC Corporations 1-10 are those corporations which committed, participated in, solicited others to engage in, and knowingly assisted, conspired with or urged others to commit the fraudulent and wrongful acts set forth herein.

18.     Each of the defendants is a person or practitioner within the meaning of the IFPA, N.J.S.A. 17:33A-1 to -30, and committed, participated in, solicited others to engage in, and knowingly assisted, conspired with or urged others to commit the fraudulent and wrongful acts set forth herein.

## III.    VENUE AND JURISDICTION

19.     Venue is placed properly before this Court because Plaintiffs reside in and actually do business in this County and each of the Defendants resides in, conducts and/or solicits business in this County.

5

3187239-1

20.     Defendants are subject to jurisdiction in New Jersey because they maintain continuous contacts with the State of New Jersey.  Among other things, Defendants actively solicit clients and provide services to individuals who reside in New Jersey; solicit and accept referrals from New Jersey providers for patients who reside in and receive health benefits issued in New Jersey; provide services/products to New Jersey residents and other patients whose health care benefits were issued or administered in New Jersey by Plaintiffs; and submit health insurance claims, directly or indirectly, to Plaintiffs in the State of New Jersey.

21.     Defendants are subject to jurisdiction in New Jersey because they entered into a scheme to defraud Aetna and Horizon in New Jersey and Plaintiffs' claims arise directly out of the Defendants' contacts with New Jersey.

## IV.   BACKGROUND

### A.   Marinos-Arsenis' Contract with Aetna

22.     In March 2007, Chryssoula Marinos-Arsenis entered into a Provider Agreement (the "Aetna Participation Agreement") with Aetna Health Inc. and its affiliates, including ALIC.  A copy of the Aetna Participation Agreement is attached hereto as Exhibit "A".

23.     Pursuant to the Aetna Participation Agreement, Marinos-Arsenis represented that she is, and "will remain through the term of the Participation Agreement, in compliance with all applicable Federal and State laws and regulations related to the Participation Agreement and the services to be provided hereunder, including, without limitation, statutes and regulations related to fraud, abuse . . . [and] false claims."  Exhibit A, ¶ 2.4.1.

6

3187239-1

24.     Pursuant to the Aetna Participation Agreement, Marinos-Arsenis agreed that Aetna "may, from time to time, notify Provider of overpayments to Provider, and Provider agrees to cooperate with Company to secure the return of any such overpayment . . . within a reasonable period of time." Exhibit A, ¶ 4.1.2.

25.     Pursuant to the Aetna Participation Agreement, Marinos-Arsenis agreed to "accept and comply with Policies of which Provider knows or reasonably should have known (e.g. Coverage Policy Bulletins or other Policies made available to Participating Providers generally)." Exhibit A, ¶ 5.1.

## B.     Marinos-Arsenis' Contract with Horizon

26.     In January 2007, Chryssoula Marinos-Arsenis entered into a Specialty Provider Agreement and an Agreement with Participating Physicians and Providers (collectively, the "Horizon Participation Agreement") with Horizon. A copy of the Horizon Participation Agreement is attached hereto as Exhibit "B".

27.     Pursuant to the Horizon Participation Agreement, Marinos-Arsenis represented that she will provide services pursuant to the agreement "within the scope of [her] professional license in a competent, professional and ethical manner, in accordance with the prevailing standards of medical practice, using appropriate skill, knowledge and diligence." Exhibit B, ¶ 2.1(b).

28.     Pursuant to the Horizon Participation Agreement, Marinos-Arsenis represented that she has "reviewed the policies, rules and procedures of Horizon and Affiliates as set forth in the applicable provider manual". Exhibit B, ¶ 2.3.

7

29.     Pursuant to the Horizon Participation Agreement, Marinos-Arsenis agreed to "refund promptly to [Horizon] any overpayment for eligible services" provided Horizon documents the overpayment. Exhibit B (second part), ¶ 10.

C.     **Health Insurance Billing**

30.     At all times material hereto, Plaintiffs paid health care insurance claims to the Defendants pursuant to and in reliance upon insurance claims submitted by Defendants.

31.     To submit a claim, healthcare providers, like the Defendants, complete standard billing forms such as the HCFA/CMS 1500 or its electronically submitted equivalent. These forms require providers to input numeric codes that describe the medical services for which the provider seeks payment so that an accurate determination can be made about whether payment is due.

32.     These forms state: "This is to certify that the foregoing information is true, accurate and complete. I understand that payment and satisfaction of this claim will be from Federal and State funds, and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable Federal or State laws."

33.     Federal regulations designate the American Medical Association's Current Procedural Terminology ("CPT") and the CMS Common Procedure Coding System ("HCPCS") codes, as maintained and distributed by the United States Department of Health and Human Services, as the standard codes to be used on these forms. 45 C.F.R. §§ 162.1002(a)(5), (b)(1).

34.     Plaintiffs, in good faith, rely on the health care provider to input the CPT or HCPCS code that most properly and accurately describes the services provided. Healthcare providers like the Defendants in this case are aware of Plaintiffs' claims adjudication process and intend for Plaintiffs

8

to rely upon the information contained in the claim form. Plaintiffs rely on the accuracy of the information and representations made by providers on submitted claims forms in determining whether to pay or deny a claim.

**D.     The Medical Services Provided by Defendants**

35.     The Defendants allegedly evaluate and treat patients who have difficulties with communication and swallowing including language impairments, speech disorders and feeding/swallowing difficulties.

36.     Since at least 2009, the Defendants submitted health insurance claims to Plaintiffs to obtain payment for their speech therapy services rendered to beneficiaries of Plaintiffs' plans and policies of insurance.

37.     In submitting health insurance claims to Plaintiffs, the Defendants routinely used CPT codes 99245; 96111; 92610; 92526; 97533; 92506 and 92507. In addition, Defendants began using CPT code 96105 when submitting claims to Horizon beginning in July 2014 but for dates of service going back as far as 2013.

38.     CPT 99245 is a procedure code that is used to describe an office consultation for a new or established patient which requires three components: (1) a comprehensive history; (2) a comprehensive examination; and (3) medical decision making of high complexity.

39.     CPT 96111 is a procedure code that is used to describe extended developmental testing (which includes assessment of motor, language, social, adaptive and/or cognitive functioning by standardized developmental instruments) with interpretation and report.

9

3187239-1

40.     CPT 92610 is a procedure code that is used to describe the evaluation of the oral and pharyngeal swallowing function.

41.     CPT 92526 is a procedure code that is used to describe the treatment of swallowing dysfunction and/or oral function for feeding.

42.     CPT 97533 is a procedure code used to describe sensory integrative techniques to enhance sensory processing and promote adaptive responses to environmental demands, direct (one-on-one) patient contact by the provider.

43.     CPT 92506 is a procedure code used to describe the evaluation of speech, language, voice, communication, and/or auditory processing disorders.

44.     CPT 92507 is a procedure code that is used to describe the treatment of speech language, voice, communication and/or auditory processing disorders.

45.     CPT 96105 is a procedure code that is used to describe the assessment of aphasia.

E.     **The Scheme to Defraud**

46.     At all times material hereto, Marinos-Arsenis was a participating provider who submitted bills -- by and through Defendant Speech & Language -- and received payment for services purportedly rendered to individuals who received health care benefits and/or health care insurance from Plaintiffs.

47.     Beginning in at least 2009, the Defendants entered into a scheme to defraud Plaintiffs and submitted insurance claims and statements for services which contained knowingly false and misleading statements, misrepresented the services performed, misrepresented the patients' actual

10

diagnoses and failed to disclose information which affected Defendants' right to payment in violation of the New Jersey Insurance Fraud Prevention Act and common law.

48.     As part of this scheme to defraud, Defendants knowingly and intentionally:

    (a)     submitted insurance claims and received payment for providing services while misrepresenting the scope of the services provided;

    (b)     submitted insurance claims and received payment for services not rendered; and

    (c)     submitted insurance claims and received payment for services while misrepresenting the patients' diagnoses for the purpose of obtaining additional reimbursement to which they were not otherwise entitled.

49.     Horizon, on its own behalf, and Aetna, both on its own behalf and through counsel, have notified the Defendants of the overpayments and requested repayment of the overpayments which efforts have been consistently rebuffed by Defendants.

### 1.     Misrepresentation of Services and Billing for Services Not Rendered

50.     For almost every Aetna member visit, Defendants routinely charged all of the following five (5) CPT codes: 99245; 96111; 92610; 92526; and 92507.

51.     For almost every Horizon member visit, Defendants routinely charged all of the following six (6) CPT codes: 96111; 92610; 92526; 92507; 92506; and 97533.

52.     The service described by CPT Code 99245 is a high level evaluation and management service which requires detailed, extensive service not performed on routine therapy visits. Physicians typically spend 80 minutes face-to-face with the patient and/or family.

3187239-1

53. Similarly, the services described by CPT Codes 96111, 92610 and 92506 are assessment codes which require preparation and interpretation of complicated reports as more fully described above.

54. The American Speech-Language-Hearing Association ("ASHA"), which is self-described as the "national, professional, scientific and credentialing association for more than 173,800 audiologists, speech-language pathologists, speech, language and hearing scientists, audiology and speech-language pathology support personnel and students" advises that evaluation codes (e.g. 99245, 96111,92610 and 92506) **should not** be billed for brief assessments that could be considered screenings. ASHA publications state that "[r]eassessments are covered if the patient exhibits a demonstrable change in motivation, clearing of confusion, or the remission of some other medical condition."

55. According to the Director of Private Health Plans for ASHA on the topic of speech evaluation services, "You can't just re-evaluate a person without a change in condition or to reassess progress made during treatment."

56. ASHA's Medical Review Guidelines further advise that "[p]eriodic routine evaluations (e.g., monthly, bi-monthly) for a patient undergoing a [Speech and Language Pathology] program are part of the treatment session and are not covered as separate evaluations . . . You would not bill 92506 and 92507 once treatment has started, even though you are continually evaluating the patient's functional level."

12

57.     Despite regularly seeing the same members two (2) to three (3) times per week from 2009 through the present, Defendants claimed to perform and submitted bills to Plaintiffs for the evaluation and management services and assessments in addition to the therapy services.

58.     Although the above-referenced codes are not "timed-codes," according to an ASHA-cited survey, a "typical session length" is 45-60 minutes although some more recent feedback indicates that "typical sessions" are moving closer toward 30 minutes. If no time is noted in the CPT code descriptor (as is the case in the codes that the Defendant regularly bills with the exception of 99245), each code counts as one session.

59.     ASHA also reported that with respect to CPT code 92506 "[a]ccording to the CMS 2004 Practice Expense Inputs database, a typical time of 156 minutes including pre-service (e.g., reviewing patient records) and post-service (e.g. writing the report and making phone calls), was determined. Thus, clinicians should keep in mind that a little over 2 ½ hours is typical for a speech-language evaluation."

60.     In addition, the American Academy of Pediatrics states, with respect to CPT Code 96111 that "[t]hese tests are typically performed by physicians or psychologists and require upwards of an hour of time. They are also accompanied by an interpretation and formal report, which may be completed at a time other than when the patient is present." (emphasis added).

61.     According to Aetna's analysis, the service associated with Code 99245 should take approximately 80 minutes; the services associated with Codes 92507, 92526, 92610 should take approximately 45-60 minutes; and the services associated with Code 96111 should take approximately 60 minutes.

13

3187239-1

62.     Based on ASHA guidelines and Plaintiffs' analysis, Defendants would be expected to meet with each patient for a bare minimum of at least two and one-half hours (2.5) hours up to five and one-half (5.5) hours (or potentially more) in order to perform the full range of services routinely billed by Defendants.

63.     From at least 2008 through at least 2013, however, Defendants regularly claim to have seen an average of between eleven (11) and thirteen (13) of Plaintiffs' members per day and, in some cases, claimed to have seen even more.  Importantly, this is only the Aetna and Horizon members that Defendants claim to have seen and does not account for members insured by other plans not administered or insured by Aetna or Horizon.  Presumably, Defendants did not limit their patient base to only Plaintiffs' members so it is reasonable to infer that Defendants actually claim to have seen more than just eleven (11) - thirteen (13) patients on average per day.

64.     Between 2011 and 2013, Defendants billed Plaintiffs for seventeen (17) different members on two (2) different dates of service;  sixteen (16) different members on eight (8) different dates of service;  fifteen (15) different members on sixteen (16) different dates of service;  and fourteen (14) different members on thirty-four (34) different dates of service.

65.     On three occasions, January 1, 2013 (**NEW YEAR'S DAY**), December 2, 2012 and October 23, 2011, Defendants billed Plaintiffs for **eighteen (18) different** members.  If each of those members were seen for the two and one-half (2.5) hours that would be expected from even a limited visit with less than the full range of services, that would amount to over a forty-five (45) hour day.  If Defendants saw each member for the maximum amount of time that would be expected, that would

14

amount to over ninety-nine (99) hours of work in one day. Again, this does not account for any patient that did not have Aetna/Horizon benefits.

66.     The Defendants' medical record documentation, supplied in response to audits conducted by Plaintiffs, did not support that the services underlying all of the codes billed were provided on each visit nor would it be practical, logical or medically necessary and appropriate to perform these services on each and every visit. In fact, there was not sufficient documentation to support the use of code 99245 on each Aetna member's initial visit to the Defendants. Nor was there sufficient documentation to support the use of codes 92506, 92610 and 96111 on **any** of the Horizon member's visits to the Defendants. The Defendants did have documentation supporting the claim that the procedures represented by Codes 96111 and 92610 were performed on each Aetna member's first visit but not for any other visit.

67.     In addition, in response to interviews conducted by the Plaintiffs Special Investigations Units, the members and parents of members stated that the Defendants' treatment sessions last only one (1) hour despite being billed for the full range of services on each visit and members also report that the services do not include diagnostic services. These members/parents report that the provider had a very strict policy regarding the one-hour maximum treatment period.

68.     One parent reported that his son received services from Defendants "maybe once a month on a weekend" yet Defendants submitted claims for sixteen (16) weekend dates of service over the course of seven (7) months.

15

69.     The limited amount of adult patients seen by the Defendants unequivocally state that they did not receive any diagnostic testing or other evaluation services despite the fact that they were billed for the services.

70.     In addition to the high volume of patients per day, Defendants also claim to have seen Plaintiffs' members on all but eighteen (18) days in 2011 -- averaging less than two (2) days off per month for the entire year.

71.     In 2012, Defendants claimed to have seen Plaintiffs' members on all but two (2) days out of the entire year. This included seeing members (mostly children) on all of the major holidays (both religious and secular) and every weekend.

72.     In 2013, Defendants claims to have seen patients on every day but Christmas Day.

73.     According to Defendants' claims, Dr. Marinos-Arsenis saw members every day from September 4, 2012 until December 25, 2014 (over fifteen (15) straight months).

74.     Defendants claimed to have seen Plaintiffs' members on Easter Sunday and New Year's Day in 2010-2013 and Thanksgiving Day and Christmas Day in 2010-2012.

75.     As a result of these claims, Plaintiffs paid Defendants $6,690,495.25 to which they were not entitled through the present.

16

3187239-1

## 2. Submission of Claims to Aetna with a Modified Diagnosis

76. On several occasions between 2009 and 2013, Defendants, in response to a denial of a claim for a particular Aetna member, would change the member's diagnosis code on subsequent claims for the express purpose of obtaining reimbursement to which they were not entitled.

77. For example, Defendants saw Aetna member J.A. from February 4, 2012 through May 4, 2012 for the treatment of Apraxia (other late effects of cerebrovascular disease). Starting on April 30, 2012, Aetna began denying a portion of the claims submitted for J.A. because J.A.'s maximum reimbursement for the benefit year for this particular condition had been exhausted. On May 7, 2012, Defendants again provided services to J.A. but, instead, submitted the claims for reimbursement with the modified diagnosis of "Partial Edentulism, Unspecified" which triggered additional reimbursement because of the allegedly "new" diagnosis. Defendants continued to treat this condition until July 9, 2012, when they again modified the diagnosis to "Dysphagia, Unspecified" due to the denial of a prior claim. Defendants' modification of J.A.'s diagnosis continued through his treatment following a denial of a claim.

78. Defendants' modification of a patient's diagnosis occurred with other Aetna members including B.C.; G.F.; D.K.; R.K.; A.S.; A.S.; J.S.; M.X.; and K.Z. Attached hereto as Exhibit "C" is a statement of the claims submitted by Defendants demonstrating those instances where Defendants modified the diagnosis for the same patient.[1]

---

[1] The exhibits to the Complaint identify the patient, CPT Code, date of service and paid amount for each claim. In order to protect the confidentiality of the patients and their medical records, Plaintiffs have not identified these patients by name in this Complaint or the exhibits. Plaintiffs will produce a separate Patient Key which identifies each patient by name and member number upon service of the Complaint.

17

79.     According to statements by the Defendants' employee, the motivation for changing the diagnosis code is to continue being paid for the therapy regardless of a prior denial.

### 3.     Submission of Modified Claims to Horizon for New Unrelated Services

80.     On 138 different occasions beginning in July 2014, Defendants submitted a claim for CPT Code 96105 a month (or sometimes more) after the purported date that the services were performed.

81.     In each of the 138 different occasions, Defendants had previously submitted a claim to Horizon for the same date of service and the same patient for different CPT Codes all of which had been denied.

82.     In response to the denial, Defendants submitted the new procedure code which was paid with no explanation as to why the procedure codes were changed for that patient.

83.     For example, Defendants submitted claims to Horizon in connection with services allegedly performed on patient E.T. on February 15, 2014 for CPT Codes 92526, 92507, 92610, 92523, 96111 and 97532. Horizon received that claim on February 18, 2014. Horizon issued a payment to Defendants in the amount of $179.76 for CPT Codes 92526, 92507 and 97532 but Horizon denied reimbursement on CPT Codes 92610, 92523 and 96111. Following that reimbursement and denial of codes, Defendants resubmitted another claim six months later for E.T. for the same date of service but this time under CPT Code 96105. Horizon paid $119.27 on the new claim.

84.     As a result of these claims, Horizon paid Defendants $15,832 to which they were not entitled through the present. Attached hereto as Exhibit "D" are examples of claims submitted by

18

Defendants for CPT codes 96105 after the submission and denial of payment for unrelated codes for the same date of service and patient.

## COUNT ONE
## Insurance Fraud

85.     Plaintiffs repeat and incorporate herein by reference the allegations contained in Paragraphs 1 through 84 of this Complaint.

86.     In submitting insurance claims for payment to Plaintiffs, the Defendants expressly represented that they had performed the services billed; that the information and statements contained in the claims submitted were true, correct and complete; and that the services provided were medically indicated and necessary.

87.     As part of the Defendants' scheme to defraud, the Defendants knowingly and intentionally:

   (a)     submitted insurance claims and received payment for providing services while misrepresenting the scope of the services provided;

   (b)     submitted insurance claims and received payment for services not rendered; and

   (c)     submitted insurance claims and received payment for services while misrepresenting the patients' diagnoses for the purpose of obtaining additional reimbursement to which they were not otherwise entitled.

88.     As part of this scheme to defraud, the Defendants knowingly submitted insurance claims and received payment for services which were either not performed or not eligible for payment. The Defendants misrepresented the nature and scope of the services provided and concealed or failed to disclose that the services billed were not eligible for payment.

19

3187239-1

89.     Defendants' conduct constitutes a pattern of fraud and violations of the IFPA so that Plaintiffs are entitled to recover treble damages.

90.     In submitting insurance claims and receiving payment from Plaintiffs, the Defendants acted in bad faith and with actual malice within the meaning of the IFPA and are liable for punitive damages.

91.     In submitting insurance claims to Plaintiffs, the Defendants concealed and failed to disclose the scheme to defraud and fraudulent acts set forth above; the actual services provided; the unlawful fees billed; the absence of documentation; and the violations of law and regulation committed by the Defendants.

92.     The information concealed and not disclosed by the Defendants was material to their insurance claims, affected their right to payment, and, if disclosed, would have caused Plaintiffs to deny payment for their insurance claims.

93.     The Defendants' submission of false and fraudulent insurance claims constitutes a pattern of violations within the meaning of the IFPA.

94.     In reliance on the false, fraudulent and incomplete insurance claims submitted by the Defendants, Plaintiffs paid Defendants $6,690,495.25 in claims for services not performed or eligible for payment.

95.     As a result of the Defendants' scheme to defraud and pattern of violations of the IFPA, Plaintiffs have suffered damages including but not limited to all amounts paid for improperly billed procedures, the costs of investigation and other losses.

20

96.    Pursuant to the IFPA, Plaintiffs are entitled to all compensatory damages, including but not limited to their costs of suit and attorneys fees, and are entitled to recover treble damages because the Defendants engaged in a pattern of violations of the IFPA.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants for all their damages, including costs of suit and attorneys' fees, and for treble damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq.

## COUNT TWO
## Common Law Fraud

97.    Plaintiffs repeat and incorporate herein by reference the allegations contained in Paragraphs 1 through 96 of this Complaint.

98.    At least as early as 2009, the Defendants entered into a scheme to defraud Plaintiffs through a pattern of false and misleading insurance claims.

99.    As part of this scheme to defraud, the Defendants intentionally submitted false insurance claims to Plaintiffs in order to procure payment for services they did not render or for services not eligible for reimbursement.

100.    In reasonable reliance on the false insurance claims submitted by the Defendants, Plaintiffs paid Defendants in excess of $6,690,495.25 in claims for services not performed or not eligible for reimbursement.

101.    As a result of the Defendants' fraud, Plaintiffs have suffered damages.

21

102.    The harm suffered by the Plaintiffs was actuated by bad faith and actual malice, that is intentional wrongdoing.  As such, Plaintiffs are entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants for all their damages, including costs of suit and attorneys' fees, and for punitive damages.

### COUNT THREE
### Breach of Contract

103.    Plaintiffs repeat and incorporate herein by reference the allegations contained in Paragraphs 1 through 102 of this Complaint.

104.    Marinos-Arsenis breached and violated Sections 2.4.1, 4.1.2, 5.1 and the duty of good faith and fair dealing implied in the Aetna Participation Agreement and Sections 2.1(b), 2.3, and 10 (second part) and the duty of good faith and fair dealing implied in the Horizon Participation Agreement by intentionally submitting false insurance claims to Plaintiffs in order to procure payment for services she did not render or for services not eligible for reimbursement.

105.    As a result of Defendant's breach of the Participation Agreements, Plaintiffs suffered damages in excess of $6,690,495.25 in payments made to Defendants.

**WHEREFORE**, Plaintiffs demands judgment in its favor and against Defendant Chryssoula Marinos-Arsenis for all their damages and for declaratory and injunctive relief.

22

3187239-1

## COUNT FOUR
**Unjust Enrichment**

106.    Plaintiffs repeat and incorporate herein by reference the allegations contained in Paragraphs 1 through 105 of this Complaint.

107.    As set forth fully above, the Defendants engaged in a scheme or practice pursuant to which they improperly and fraudulently billed for services not rendered or otherwise ineligible for reimbursement.

108.    As part of this scheme and/or practice, the Defendants negligently, carelessly or intentionally submitted insurance claims for services which contained false, inaccurate and incomplete statements which affected their right to payment.

109.    The Defendants knew or should have known that the insurance claims for services contained false, inaccurate and incomplete statements which affected their right to payment.

110.    As a result of the Defendants' improper billing, Plaintiffs paid them in excess of $6,690,495.25 to which the Defendants are not entitled.

111.    Plaintiffs reasonably and foreseeably relied on the Defendants' misrepresentations in issuing payment on insurance claims submitted by the Defendants.

112.    The Defendants' actions were negligent and proximately caused damages to Plaintiffs.

113.    As a result of the Defendants' fraud and improper billing, the Defendants have been unjustly enriched.

114.    The harm suffered by the Plaintiffs was actuated by bad faith and actual malice, that is intentional wrongdoing. As such, Plaintiffs are entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10.

23

3187239-1

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants for all their damages, including costs of suit and attorneys' fees, and for punitive damages.

## COUNT FIVE
### Negligent Misrepresentation

115. Plaintiffs repeat and incorporate herein by reference the allegations contained in Paragraphs 1 through 114 of this Complaint.

116. The Defendants knew or should have known, or were deliberately ignorant that the insurance claims submitted misrepresented the actual services rendered and that this would cause Plaintiffs to issue payment to the Defendants that they were not entitled to receive.

117. The Defendants had a duty and responsibility to verify the accuracy and completeness of information contained on insurance claims forms submitted to Plaintiffs bearing their signature.

118. Plaintiffs foreseeably and reasonably relied on the Defendants' representations to their detriment in issuing payment to the Defendants.

119. The actions of the Defendants constitute negligence, and were the direct and proximate cause of damage to Plaintiffs.

120. As of a result, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants for all their damages, including costs of suit and attorneys' fees, and for punitive damages.

24

## COUNT SIX
### Insurance Fraud, Fraud, Negligent Misrepresentation, Unjust Enrichment vs. John Does 1-10 and ABC Corporations 1-10

121.     Plaintiffs repeat and incorporate herein by reference the allegations contained in Paragraphs 1 through 120 of this Complaint.

122.     At all times material hereto, Defendants John Does 1-10 were individuals who committed, participated in, solicited others to engage in, and knowingly assisted, conspired with or urged the Defendants named herein to commit the fraudulent acts set forth in this Complaint.

123.     At all times material hereto, Defendants ABC Corporations 1-10 are corporations engaged in business in the State of New Jersey which committed, participated in, solicited others to engage in, and knowingly assisted, conspired and urged the Defendants named herein to commit the fraudulent acts set forth in this Complaint.

124.     As a result of the wrongful acts and fraud of John Does 1-10 and ABC Corporations 1-10, Plaintiffs have suffered damages, including but not limited to all amounts paid for improperly billing procedures and the costs of investigation of the losses.

125.     Pursuant to the IFPA, Plaintiffs are entitled to all compensatory damages, including but not limited to, their costs of suit and attorneys fees, and are entitled to recover treble damages because Defendants engaged in a pattern of violations of the IFPA.

3187239-1

**WHEREFORE**, Plaintiffs demand judgment in their favor and against all Defendants John Does 1-10 and ABC Corporations 1-10 for all their damages, including costs of suit and attorneys' fees, for punitive damages and for treble damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq.

**CONNELL FOLEY LLP**
*Attorneys for Plaintiffs*
*Aetna Health Inc., Aetna Life Insurance*
*Company and Horizon Blue Cross Blue Shield*
*of New Jersey*

By: _____

DATE:  September 11, 2014

Edward S. Wardell, Esquire
Thomas Vecchio, Esquire
Olivia F. Cleaver, Esquire

26

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to Rule 4:5-1, the undersigned hereby states on behalf of the Plaintiffs in this action, that the matter in controversy is not the subject of any other action pending in any other Court or pending arbitration proceeding to the best of this party's knowledge or belief, nor is any such other action or arbitration proceeding contemplated. Further, other than the parties set forth in this pleading, this party is aware of no other person or entity that should be joined in the above action. In addition, it is recognized that it is the continuing obligation of each party to file and serve upon all parties and the Court an Amended Certification if there is a change in the facts as stated in this original Certification.

**CONNELL FOLEY LLP**

*Attorneys for Plaintiffs*
*Aetna Health Inc., Aetna Life Insurance*
*Company and Horizon Blue Cross Blue Shield*
*of New Jersey*

By: _____

DATE: September 11, 2014

Edward S. Wardell, Esquire
Thomas Vecchio, Esquire
Olivia F. Cleaver, Esquire

27

3187239-1

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Edward S. Wardell, Esquire is hereby designated as trial counsel for

Plaintiffs Aetna Health Inc., Aetna Life Insurance Company and Horizon Blue Cross Blue Shield of

New Jersey.

<div align="right">

**CONNELL FOLEY LLP**

*Attorneys for Plaintiffs*
*Aetna Health Inc., Aetna Life Insurance*
*Company and Horizon Blue Cross Blue Shield*
*of New Jersey*

By: _____

</div>

DATE:  September 11, 2014

<div align="right">

Edward S. Wardell, Esquire
Thomas Vecchio, Esquire
Olivia F. Cleaver, Esquire

</div>

28

**Appendix XII-B1**

| | | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|
|  | **CIVIL CASE INFORMATION STATEMENT** **(CIS)**<br><br>Use for initial Law Division<br>Civil Part pleadings (not motions) under *Rule* 4:5-1<br>**Pleading will be rejected for filing, under *Rule* 1:5-6(c),<br>if information above the black bar is not completed<br>or attorney's signature is not affixed** | PAYMENT TYPE: ☐CK ☐CG ☐CA<br>CHG/CK NO.<br><br>AMOUNT:<br><br>OVERPAYMENT:<br><br>BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Edward S. Wardell/Thomas Vecchio | TELEPHONE NUMBER<br>(856) 317-7100 | COUNTY OF VENUE<br>Camden |
|---|---|---|
| FIRM NAME (if applicable)<br>CONNELL FOLEY, LLP | | DOCKET NUMBER (when available)<br>CAM-L-____ -14 |
| OFFICE ADDRESS<br>Liberty View Building<br>457 Haddonfield Road, Suite 230<br>Cherry Hill, NJ 08002 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND  ☐ Yes  ☒ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Aetna Health Inc.; Aetna Life Insurance Company; and Horizon Blue Cross Blue Shield of New Jersey | CAPTION<br>Aetna Health Inc.; Aetna Life Insurance Company; and Horizon Blue Cross Blue Shield of New Jersey v. Speech & Language Center, LLC; Chryssoula Marinos-Arsenis; John Does 1-10; and ABC Corps. 1-10 |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>514 | HURRICANE SANDY RELATED?<br>☐ YES  ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO |
|---|---|---|
| | | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ Yes  ☒ No | IF YES, LIST DOCKET NUMBERS | |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes  ☒ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☐ UNKNOWN | |

| THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE. |
|---|

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION |
|---|

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☒ Yes  ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☒ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?  ☒ YES  ☐ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

FILED
SEP 11 2014
CAMDEN COUNTY SUPERIOR COURT

| ♿ | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes  ☐ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ Yes  ☒ No | IF YES, FOR WHAT LANGUAGE? |

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

| ATTORNEY SIGNATURE: | *[signature]* | 9/11/14 |
|---|---|---|

- Side 2



# CIVIL CASE INFORMATION STATEMENT
(CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM (coverage issues only)
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (summary action)
- 999  OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621  UM or UIM CLAIM (includes bodily injury)
- 699  TORT – OTHER

### Track III - 450 days' discovery
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 620  FALSE CLAIMS ACT
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
| | | |
|---|---|---|
| 266  HORMONE REPLACEMENT THERAPY (HRT) | 288 | PRUDENTIAL TORT LITIGATION |
| 271  ACCUTANE/ISOTRETINOIN | 289 | REGLAN |
| 274  RISPERDAL/SEROQUEL/ZYPREXA | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 278  ZOMETA/AREDIA | 291 | PELVIC MESH/GYNECARE |
| 279  GADOLINIUM | 292 | PELVIC MESH/BARD |
| 281  BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 282  FOSAMAX | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 284  NUVARING | 296 | STRYKER REJUVENATE/ABG II MODULAR  HIP STEM COMPONENTS |
| 285  STRYKER TRIDENT HIP IMPLANTS | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 286  LEVAQUIN | 601 | ASBESTOS |
| 287  YAZ/YASMIN/OCELLA | 623 | PROPECIA |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**   ☐ **Putative Class Action**   ☐ **Title 59**

CAMDEN COUNTY
SUPERIOR COURT
HALL OF JUSTICE
CAMDEN          NJ 08103

COURT TELEPHONE NO. (856) 379-2200
COURT HOURS  8:30 AM - 4:30 PM

TRACK ASSIGNMENT NOTICE

DATE:     SEPTEMBER 12, 2014
RE:       AETNA HEALTH INC VS SPEECH & LANGUAGE CENTER LLC
DOCKET:   CAM L -003527 14

THE ABOVE CASE HAS BEEN ASSIGNED TO:   TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON ROBERT G. MILLENKY

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     101
AT:
(856) 379-2200 EXT 3060.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH   R.4:5A-2.

ATTENTION:

ATT: EDWARD S. WARDELL
CONNELL FOLEY LLP
457 HADDONFIELD ROAD   SUITE 230
LIBERTY VIEW BLDG
CHERRY HILL       NJ 08002

JUAXT5

**MAZIE SLATER KATZ & FREEMAN, LLC**
Eric D. Katz, Esq. (Attorney ID #016791991)
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Defendants-Counterclaimants

| | |
|---|---|
| AETNA HEALTH INC.; AETNA LIFE INSURANCE COMPANY; and HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | :SUPERIOR COURT OF NEW JERSEY<br>:LAW DIVISION:SOMERSET COUNTY<br>:DOCKET NO.:SOM-L-281-15 |
| Plaintiffs-Counterclaim-<br>Defendants, | |
| vs. | Civil Action |
| SPEECH & LANGUAGE CENTER, LLC CHRYSSOULA MARINOS-ARSENIS, JOHN DOES 1-10; and ABC CORPS 1-10, | :**ANSWER, SEPARATE DEFENSES,**<br>:**AND COUNTERCLAIMS** |
| Defendants-Counterclaimants. | |

Defendants-Counterclaimants, Speech & Language Center, LLC ("SLC") and Chryssoula Marinos-Arsenis ("Ms. Marinos-Arsenis") (collectively referred to herein as "Defendants-Counterclaimants"), by and through their undersigned counsel, Mazie Slater Katz & Freeman, LLC, as and for their Answer to the Complaint filed by Plaintiff-Counterclaim Respondent, Horizon Blue Cross Blue Shield of New Jersey ("Horizon") allege as follows:[1]

---

[1] By Order of the Camden County Superior Court, filed February 26, 2015, the claims of Plaintiffs, Aetna Health, Inc. and Aetna Life Insurance Company (collectively the "Aetna Plaintiffs") were dismissed. Consequently, Defendants-Counterclaimants will not respond to any allegations pled by the Aetna Plaintiffs.

## AS TO THE "INTRODUCTION"

1.    The allegations of paragraph 1 are denied.

2.    The allegations of paragraph 2 are denied.

3.    Defendants-Counterclaimants admit only that Ms. Marinos-Arsenis was and is a licensed speech-language pathologist and therapist and the sole owner and officer of SLC at all relevant times.  The remaining allegations of paragraph 3 are denied.

4.    Defendants-Counterclaimants admit only that Ms. Marinos-Arsenis and the parents of her patients report that Ms. Marinos-Arsenis' treatment sessions are one (1) hour.  The remaining allegations of paragraph 4 are denied.

5.    The allegations of paragraph 5 are denied.

6.    Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 6 and leave Horizon to its proofs.

7.    The allegations of paragraph 7 are denied.

## AS TO THE "PARTIES"

8.    No response is required to the allegations of paragraph 8 as they concern the Aetna Plaintiffs.

9.    No response is required to the allegations of paragraph 9 as they concern the Aetna Plaintiffs.

10.    Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 10 and leave Horizon to its proofs.

11.    Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 11 and leave Horizon to its proofs.

2

12.   Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 12 and leave Horizon to its proofs

13.   Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 13 and leave Horizon to its proofs

14.   The allegations of paragraph 14 are admitted.

15.   The allegations of paragraph 15 are admitted except the "home address of 380 Claremont Road, Bernardsville, New Jersey" is denied.

16.   The allegations of paragraph 16 are denied.

17.   The allegations of paragraph 17 are denied.

18.   The allegations of paragraph 18 are denied.

## AS TO THE "VENUE AND JURISDICTION"

19.   The allegations of paragraph 19 are denied.

20.   The allegations of paragraph 20 state legal conclusions and therefore no response is required.  To the extent that any of the allegations of paragraph 20 require a response, Defendants-Counterclaimants deny all such allegations.

21.   The allegations of paragraph 21 are denied.

## AS TO THE "BACKGROUND"

22.   No response is required to the allegations of paragraph 22 as they concern the Aetna Plaintiffs.

23.   No response is required to the allegations of paragraph 23 as they concern the Aetna Plaintiffs.

3

24.     No response is required to the allegations of paragraph 24 as they concern the Aetna Plaintiffs.

25.     No response is required to the allegations of paragraph 25 as they concern the Aetna Plaintiffs.

26.     The allegations of paragraph 26 are admitted.

27.     The allegations of paragraph 27 are admitted.

28.     The allegations of paragraph 28 are admitted.

29.     The allegations of paragraph 29 are denied.

30.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 30 and leave Horizon to its proofs.

31.     The allegations of paragraph 31 are admitted.

32.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 32 and leave Horizon to its proofs.

33.     The allegations of paragraph 33 are admitted.

34.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 34 and leave Horizon to its proofs.

35.     The allegations of paragraph 35 are admitted.

36.     The allegations of paragraph 36 are admitted.

37.     The allegations of paragraph 37 are admitted except they are denied as to CPT Code 99245.

38.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 38 and leave Horizon to its proofs.

4

39. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 39 and leave Horizon to its proofs.

40. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 40 and leave Horizon to its proofs.

41. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 41 and leave Horizon to its proofs.

42. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 42 and leave Horizon to its proofs.

43. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 43 and leave Horizon to its proofs.

44. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 44 and leave Horizon to its proofs.

45. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 45 and leave Horizon to its proofs.

46. The allegations of paragraph 46 are admitted.

47. The allegations of paragraph 47 are denied.

48. The allegations of paragraph 48 are denied.

49. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 49 and leave Horizon to its proofs.

50. No response is required to the allegations of paragraph 50 as they concern the Aetna Plaintiffs.

51. Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 51 and leave Horizon to its proofs.

5

52.     No response is required to the allegations of paragraph 52 as they concern the Aetna Plaintiffs.

53.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 53 and leave Horizon to its proofs.

54.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 54 and leave Horizon to its proofs.

55.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 55 and leave Horizon to its proofs.

56.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 56 and leave Horizon to its proofs.

57.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 57 and leave Horizon to its proofs.

58.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 58 and leave Horizon to its proofs.

59.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 58 and leave Horizon to its proofs.

60.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 60 and leave Horizon to its proofs.

61.     No response is required to the allegations of paragraph 61 as they concern the Aetna Plaintiffs.

62.     The allegations of paragraph 62 are denied.

63      The allegations of paragraph 63 are denied.

64.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 64 and leave Horizon to its proofs.

65.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 65 as to Horizon's allegation that "Defendants billed Plaintiffs for eighteen (18) different members," and leave Horizon to its proofs. The remaining allegations of paragraph 65 are denied.

66.     The allegations of paragraph 66 are denied.

67.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 67 and leave Horizon to its proofs.

68.     No response is required to the allegations of paragraph 68 as they the Aetna Plaintiffs.

69.     The allegations of paragraph 69 are denied.

70.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 70 and leave Horizon to its proofs.

71.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 71 and leave Horizon to its proofs.

72.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 72 and leave Horizon to its proofs.

73.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 73 and leave Horizon to its proofs.

74.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 74 and leave Horizon to its proofs.

75.     The allegations of paragraph 75 are denied.

76.     No response is required to the allegations of paragraph 76 as they concern the Aetna Plaintiffs.

77.     No response is required to the allegations of paragraph 77 as they concern the Aetna Plaintiffs.

78.     No response is required to the allegations of paragraph 78 as they concern the Aetna Plaintiffs.

79.     No response is required to the allegations of paragraph 79 as they concern the Aetna Plaintiffs.

80.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 80 and leave Horizon to its proofs.

81.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 81 and leave Horizon to its proofs.

82.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 82 and leave Horizon to its proofs.

83.     Defendants-Counterclaimants neither admit nor deny the allegations of paragraph 83 and leave Horizon to its proofs.

84.     The allegations of paragraph 84 are denied.

## AS TO COUNT ONE
### (Insurance Fraud)

85.     Defendants-Counterclaimants repeat and reallege their responses to paragraphs 1 through 84 as if fully set forth herein.

86.     The allegations of paragraph 86 are admitted.

87.     The allegations of paragraph 87 are denied.

88.     The allegations of paragraph 88 are denied.

8

89.     The allegations of paragraph 89 are denied.

90.     The allegations of paragraph 90 are denied.

91.     The allegations of paragraph 91 are denied.

92.     The allegations of paragraph 92 are denied.

93.     The allegations of paragraph 93 are denied.

94.     The allegations of paragraph 94 are denied.

95.     The allegations of paragraph 95 are denied.

96.     The allegations of paragraph 96 are denied.

### AS TO COUNT TWO
### (Common Law Fraud)

97.     Defendants-Counterclaimants repeat and reallege their responses to paragraphs

1 through 96 as if fully set forth herein.

98.     The allegations of paragraph 98 are denied.

99.     The allegations of paragraph 99 are denied.

100.    The allegations of paragraph 100 are denied.

101.    The allegations of paragraph 101 are denied.

102.    The allegations of paragraph 102 are denied.

### AS TO COUNT THREE
### (Breach of Contract)

103.    Defendants-Counterclaimants repeat and reallege their responses to paragraphs

1 through 102 as if fully set forth herein.

104.    The allegations of paragraph 104 are denied.

105.    The allegations of paragraph 105 are denied.

9

## AS TO COUNT FOUR
### (Unjust Enrichment)

106.    Defendants-Counterclaimants repeat and reallege their responses to paragraphs 1 through 105 as if fully set forth herein.

107.    The allegations of paragraph 107 are denied.

108.    The allegations of paragraph 108 are denied.

109.    The allegations of paragraph 109 are denied.

110.    The allegations of paragraph 110 are denied.

111.    The allegations of paragraph 111 are denied.

112.    The allegations of paragraph 112 are denied.

113.    The allegations of paragraph 113 are denied.

114.    The allegations of paragraph 114 are denied.

## AS TO COUNT FIVE
### (Negligent Misrepresentation)

115.    Defendants-Counterclaimants repeat and reallege their responses to paragraphs 1 through 114 as if fully set forth herein.

116.    The allegations of paragraph 116 are denied.

117.    The allegations of paragraph 117 are denied.

118.    The allegations of paragraph 118 are denied.

119.    The allegations of paragraph 119 are denied.

120.    The allegations of paragraph 120 are denied.

## AS TO COUNT SIX
### (John Doe Insurance Fraud, Etc.)

121.    Defendants-Counterclaimants repeat and reallege their responses to paragraphs 1 through 120 as if fully set forth herein.

10

122.    No response is made to the allegations of paragraph 122 as there are no allegations directed against Defendants-Counterclaimants contained therein. To the extent that any of the allegations of paragraph 122 require a response Defendant-Counterclaimants deny all such allegations.

123.    No response is made to the allegations of paragraph 123 as there are no allegations directed against Defendants-Counterclaimants contained therein. To the extent that any of the allegations of paragraph 123 require a response Defendant-Counterclaimants deny all such allegations.

124.    No response is made to the allegations of paragraph 124 as there are no allegations directed against Defendants-Counterclaimants contained therein. To the extent that any of the allegations of paragraph 124 require a response Defendant-Counterclaimants deny all such allegations.

125.    No response is made to the allegations of paragraph 125 as there are no allegations directed against Defendants-Counterclaimants contained therein. To the extent that any of the allegations of paragraph 125 require a response Defendant-Counterclaimants deny all such allegations.

## SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

The Court lacks subject matter jurisdiction.

### SECOND SEPARATE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### THIRD SEPARATE DEFENSE

The claims in the Complaint are barred by the doctrine of laches.

11

## FOURTH SEPARATE DEFENSE

The claims in the Complaint are barred by the doctrines of estoppel and waiver.

## FIFTH SEPARATE DEFENSE

The claims in the Complaint are barred by the doctrine of unclean hands.

## SIXTH SEPARATE DEFENSE

Horizon lacks standing to assert the allegations in the Complaint.

## SEVENTH SEPARATE DEFENSE

The damages alleged in the Complaint were not caused by the incidents alleged therein.

## EIGHTH SEPARATE DEFENSE

Horizon has not suffered any damages or, in the alternative, any damages that Horizon may have suffered were caused by its own conduct.

## NINTH SEPARATE DEFENSE

The claims in the Complaint are barred by the doctrines of set-off and recoupment.

## TENTH SEPARATE DEFENSE

The claims in the Complaint are barred by the applicable statutes of limitations.

## ELEVENTH SEPARATE DEFENSE

The claims in the Complaint are barred because Horizon failed to mitigate its alleged damages.

## TWELFTH SEPARATE DEFENSE

Any misrepresentations, acts or omissions by Defendants-Counterclaimants did not directly or proximately cause the alleged injuries of Horizon.

12

## THIRTEENTH SEPARATE DEFENSE

The claims of the Complaint are barred, or any recovery should be reduced, to the extent of Horizon's own culpable conduct, including its own contributory or comparative negligence, breach of contract or individual acts of fraud or negligent misrepresentation.

## FOURTEENTH SEPARATE DEFENSE

Horizon is not entitled to any relief because Defendants-Counterclaimants did not engage in any conduct that is in violation of any law, statute or regulation.

## FIFTEENTH SEPARATE DEFENSE

The claims set forth in the Complaint are barred by accord and satisfaction.

## SIXTEENTH SEPARATE DEFENSE

The claims of Horizon are barred to the extent that it, or its agents, spoliated evidence, including without limitation, by destroying relevant hard copy and electronic records.

## SEVENTEENTH SEPARATE DEFENSE

The claims of Horizon are barred because it failed to allow Defendants-Counterclaimants an opportunity to cure any alleged deficiencies.

## EIGHTEENTH SEPARATE DEFENSE

To the extent that Horizon is seeking equitable relief it is not entitled to same because it has an adequate remedy of law.

## NINETEENTH SEPARATE DEFENSE

To the extent that the claims of Horizon rely on oral representations, such claims are barred by the Statute of Frauds.

## TWENTIETH SEPARATE DEFENSE

Horizon's allegations of breach of contract and statutory violations fail to specify any legitimate factual basis.

## TWENTY-FIRST SEPARATE DEFENSE

Horizon is barred from asserting claims of breach of contract because it breached material terms of its agreement with Defendants-Counterclaimants, and Horizon's breaches occurred first.

## TWENTY-SECOND SEPARATE DEFENSE

Defendants-Counterclaimants intend to rely on any additional separate defenses which become available or apparent during discovery and thus they reserve the right to amend their Answer to the Complaint to assert such additional defenses.

WHEREFORE, Defendants-Counterclaimants demand judgment:

(a)     Dismissing Horizon's complaint with prejudice;

(b)     Awarding reasonable attorneys' fees and costs incurred in connection with defending the allegations in the Complaint; and

(c)     Granting such other and further relief as this Court may deem just and proper.

## COUNTERCLAIMS

Counterclaimants, Speech & Language Center and Chryssoula Marinos-Arsenis (collectively the "Counterclaimants"), complaining against Counterclaim-Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), say as follows:

## PARTIES

1.     At all relevant times herein, Speech & Language Center, LLC ("SLC") was and is a limited liability corporation existing under the laws of the State of New Jersey with

its principal place of business at 65 Mountain Boulevard, Suite 207, Warren, New Jersey, providing diagnostic speech testing and therapy services to individuals who received health benefits or health insurance from Horizon.

2.     At all relevant times herein, Chryssoula Marinos-Arsenis was and is a licensed speech-language pathologist and therapist and the sole owner and officer of SLC.

3.     At all relevant times herein, Horizon was and is a health service corporation in New Jersey with its principal place of business in Newark, New Jersey. Horizon provided, inter alia, healthcare benefits and healthcare insurance to members and their dependents for the claims at issue in this case.

## FACTS COMMON TO ALL COUNTS

4.     Counterclaimants provide, among other things, oral motor swallowing treatment and evaluations, speech production treatment and evaluations, cognitive linguistic treatment and evaluations, sensory integration and perception treatment, evaluations and augmentative and alternative communication and patient/parent counseling. Virtually all of Counterclaimants' patients are minor children.

5.     Counterclaimants' treatments and evaluations are individually tailored to treat each patient's particular condition(s), and include, without limitation: autism and other spectrum disorders, aphasia, dysfluency disorder, articulation and phonology disorder, voice disorder, language disability, word retrieval disorder, verbal memory disorder, speech production/perception disorder, language comprehension disorder, expressive language disorder, receptive language disorder, cognitive communication disorder, swallowing and oral motor disorder, Parkinson's disease, Multiple Sclerosis, Huntington's disease, Amyotrophic Lateral Sclerosis, traumatic brain injury, dementia, Alzheimer's disease, saliva swallow and

15

saliva control, Fragile X syndrome, Down's syndrome, echolalia, esophageal speech, use of electolarynx, tracheoesophageal speech and respiratory disorders.

## Contractual Relationship Between Counterclaimants and Horizon

6.      Since January 2007, Counterclaimants have been a contracted network provider of Horizon. In pertinent part, under the provider agreement between Horizon and Counterclaimants, Horizon "is responsible for Payment and for the performance of administrative . . . and other functions as are appropriate for the administration of this Agreement," where "Payment" is defined as the "amount payable to [Counterclaimants] for Covered Services . . . . ."

7.      From roughly January 1, 2007 until August 1, 2013, a period of 6 ½ years, Horizon regularly processed and paid Counterclaimants' claims for "Covered Services" rendered to Counterclaimants' patients, all of whom are either insured by Horizon ("Horizon Claims") or are insured by non-New Jersey Blue Cross plans for which Horizon provides administrative services ("Blue Card Claims"). Indeed, since 2007, virtually 100% of Counterclaimants' practice and revenue involves claims for services rendered to children under Horizon Claims and Blue Card claims.

## Horizon's Audit of Counterclaimants

8.      In or about August 2013, Horizon conducted a very limited audit of Counterclaimants' patient charts. In February 2014, based on the purported results of that audit and employing an improper and flawed extrapolation over a seven year period, Horizon requested a refund of many millions of dollars, and further advised that going forward

defendant was placing on "pre-payment review" three CPT codes,[2] specifically 96111, 92506 and 92610, that Counterclaimants bill for the services they provide.    As of January 1, 2014, when CPT code 92506 was deleted and replaced by CPT codes 92521, 92522, 92523 and 92524, Horizon advised that it was also placing those replacement codes on "pre-payment review."

9.      Although Horizon ostensibly utilizes "pre-payment review" to review clinical records defendant requests from a healthcare provider before determining whether to pay for particular services, in reality that is simply a pretense and Horizon regularly employs "pre-payment review" as a means to permanently pend claims and deny payment.

10.     Horizon did not place on "pre-payment review" any other CPT codes billed by Counterclaimants based on its audit, and, in fact, expressly agreed that all other services billed by Counterclaimants would be processed and paid in the ordinary course.

11.     Horizon's lead auditor that conducted the audit of Counterclaimants' practice, Scott Johnson, has no professional background in correct coding practices and, in addition, upon information and belief, is compensated in part based on the amount of money Mr. Johnson is able to recoup from provider audits, like Counterclaimants' audit.

12.     Counterclaimants contested the results of the audit and, with the assistance of its expert, Patrice Morin-Spatz, CPC, CMSCS, CHCI, a certified professional coder and former editor of the American Medical Association ("AMA") CPT book, has vigorously

---

[2]     The Current Procedural Terminology, or CPT, was developed by the American Medical Association as a means to report medical procedures and services to insurance companies.   The CPT codes are standardized five digit numeric codes that describe the services rendered to patients.

17

denied any wrongdoing. Ms. Morin-Spatz has testified as an expert on coding issues on multiple occasions and in different courts across the county.

## Horizon's Breaches Under the Parties' Agreement

### A.  Horizon's Refusal to Pay or Administer Payment of Uncontested Claims

13.     Although Horizon expressly concedes Counterclaimants should be paid for their services for codes not under "pre-payment review," since approximately March 2014, if not earlier, Horizon has refused to pay Horizon Claims and has refused to properly administrate Blue Card Claims. Indeed, since in or about March 2014, Counterclaimants have continuously requested that Horizon properly administer the Blue Card Claims so that those claims would be paid. Despite countless promises to remedy the problem, payment on the Blue Card Claims remains outstanding.

14.     On February 9, 2015, Horizon again paid lip service to Counterclaimants and once again represented that "Horizon is continuing in its effort to adjust those claims" impacted by the "Blue Card processing issue . . . we have discussed extensively." Equally important, although "Horizon acknowledges" that denials of payment on the Horizon Claims "were errors and have been adjusted accordingly," that representation is false and the problem persists.

15.     In short, Horizon has continuously misrepresented that it is acting in good faith when, in reality, it has done nothing other than engage in abhorrent tactics by refusing to pay or administrate numerous claims that Horizon openly concedes are not disputed and should be paid.

16.     The failure of Horizon to perform under the parties' agreement and to make or facilitate payment of the uncontested Horizon Claims and Blue Card Claims has severely

jeopardized SLC's ability to remain open as a viable business and compromised Counterclaimants' ability to service their patients.

C.   **Horizon's Improper and Arbitrary Pending of CPT Codes Utilized by Counterclaimants**

17.   Horizon has also improperly and arbitrarily refused to pay Counterclaimants for the services represented by several CPT codes they billed, placing all of these codes under "pre-payment review." Most of these codes were never audited by Horizon. Presently, Horizon has pended almost 80% of all CPT codes billed by Counterclaimants.

1.   **CPT Code 96111**

18.   CPT code 96111 is defined by the AMA as follows:

> Developmental testing; extended (includes assessment of motor, language, social, adaptive and/or cognitive functioning by standardized developmental instruments) with interpretation and report.

19.   Based on its flawed audit, Horizon asserted that none of the Counterclaimants' clinical records contained a report or standardized test that would support the use of this code.

20.   Contrary to Horizon's erroneous assertion, however, in each instance where Counterclaimants billed CPT code 96111, the corresponding clinical records contained the required supporting documentation establishing that Counterclaimants have properly utilized this code.

2.   **CPT Code 92506**

21.   According to the AMA, CPT code 92506 is utilized for:

> Evaluation of speech, language, voice, communication, and/or auditory processing.

22.   Based on its flawed audit, Horizon erroneously concluded that Counterclaimants did not perform the requisite patient evaluations in conformance with CPT

19

code 92506, that the code should not be billed as often as it was by Counterclaimants, and that there were purportedly no clinical findings in the records reviewed supporting the use of the code.

23.     Once again, however, Horizon's accusations were false.   In each instance where the code was utilized, there was ample documented clinical support in the medical records and that Counterclaimants performed the appropriate evaluations conforming to the use of the code.   Moreover, Counterclaimants properly billed CPT code 92506, where clinically appropriate, because the code is not a time-based code.

    **3.**    **CPT Code 92610**

24.     According to the AMA, CPT code 92610 is for the:

Evaluation of all pharyngeal swallowing function.

25.     As a result of Horizon's flawed audit, Horizon erroneously concluded that Counterclaimants did not undertake the appropriate evaluations in conformance with the code, nor should the code have been utilized with the frequency that Counterclaimants billed it.

26.     Once again, however, Horizon's conclusions are wrong.   In all of the records reviewed by Horizon, there was demonstrative proof that Counterclaimants clearly performed the necessary evaluations to support the use of the code.   Furthermore, Counterclaimants utilized the code with the correct frequency based on the medical need to reassess each patient at every office visit due to frequent changes in the patient's condition.   In short, Counterclaimants correctly billed CPT code 92610 in all instances where Horizon audited Counterclaimants' patient charts.

## Other CPT Codes Horizon Improperly and Arbitrarily Added to "Pre-Payment Review" Without Conducting an Audit

27.     After filing its lawsuit, Horizon improperly added CPT codes 96125, 96105, and 92626 to "pre-payment review," despite never auditing the practice regarding its use of these codes. On February 9, 2015, Horizon's counsel advised Counterclaimants' that Horizon also added CPT code 97533 to "pre-payment review" because Counterclaimants billed this code in "multiple units" and because of the alleged "similarity between this procedure and the procedures already placed on pre-payment review."    Horizon's actions have irreparably harmed Counterclaimants.

28.     CPT code 97533 is utilized to document the treatment of sensory integration disorder. Sensory integration disorder or dysfunction is defined as difficulty in organizing and processing sensory information from the environment. Therapy includes organized and systematic techniques of providing specific sensory input to generate and facilitate an adaptive response.

29.     Speech and language problems as well as swallowing disorders often coexist in children with sensory integration dysfunction. The speech-language pathologist plays an important role in treatment. Speech pathologists concurrently integrate: (i) sensory activities into treatment to stimulate language formulation and speech production (CPT 92507); and (ii) sensory activities into treatment to stimulate the oral motor function and promote the swallowing process (CPT 92526).

30.     CPT code 97533 has been utilized by Counterclaimants for over 6 years. At no time has this code ever been challenged by Horizon or any other payor. The use of this code is critical and its loss would not only economically ruin Counterclaimants' business, but would be detrimental to the treatment of Counterclaimants' patients.

21

1. **Background of CPT Code 97533**

31.    The CPT book defines code 97533 in the following way:

> 97533 Sensory integrative techniques to enhance sensory
> processing and promote adaptive responses to environmental
> demands; direct (one-on-one) patient contact, each 15 minutes.

The code 97533 was added to the CPT book back in 2001. Prior to that time, it was part of the code 97770 which also included compensatory training. The AMA decided to separate the two methods of treatment to eliminate the confusion that many users of the code were having in showing precisely what services had been performed. The AMA relocated the code 97533 to the "Therapeutic Procedures" section of the CPT book so that any therapist who provided one-on-one contact could employ it.

32.    The 97533 code for sensory integrative techniques describes methods that are used to enhance the sensory processing of the patient and promote adaptive responses to outside demands. Typically, this type of treatment is performed when a shortfall from one of the sensory systems (e.g., vestibular, proprioceptive, tactile, visual or auditory) decreases an individual's ability to make adaptive sensory, motor and behavioral responses to the outside world.

33.    Symptoms of sensory integrative impairments include poor postural responses, anxiety or fear related to movement, poor motor planning, excessive clumsiness, awkward movements, poor coordination of bilateral movements, hypersensitivity or hyposensitivity just to name a few. Individuals who typically need these sensory treatments are often children and many of them have autism, developmental disorders, attention deficit disorders, cerebral palsy and motor apraxia.

34.    With relationship to a speech pathologist such as SLC, apraxia of speech for

children ("CAS") is a motor speech disorder in which the child has problems saying sounds,

syllables, and words due to the brain having problems planning to move the body parts (e.g.,

lips, jaw, tongue) needed for speech. The child knows what he or she wants to say, but his/her

brain has difficulty coordinating the muscle movements necessary to say those words.

35.    According to the American Speech-Language-Hearing Association, some of

the signs and symptoms of children with apraxia include:

- Does not coo or babble as an infant
- First words are late, and they may be missing sounds
- Only a few different consonant and vowel sounds
- Problems combining sounds; may show long pauses between sounds
- Simplifies words by replacing difficult sounds with easier ones or by deleting difficult
- sounds (although all children do this, the child with apraxia of speech does so more often)
- May have problems eating
- Inconsistent sound errors that are not the result of immaturity
- Has difficulty imitating speech, but imitated speech is more clear than spontaneous speech
- May appear to be groping when attempting to produce sounds or to coordinate the lips, tongue, and jaw for purposeful movement
- Has more difficulty saying longer words or phrases clearly than shorter ones
- Appears to have more difficulty when he or she is anxious
- Is hard to understand, especially for an unfamiliar listener
- Sounds choppy, monotonous, or stresses the wrong syllable or word

**Potential Other Problems**

- Delayed language development
- Other expressive language problems like word order confusions and word recall
- Difficulties with fine motor movement/coordination
- Over sensitive (hypersensitive) or under sensitive (hyposensitive) in their mouths (e.g., may not like tooth brushing or crunchy foods, may not be able to identify an object in their mouth through touch)
- Children with CAS or other speech problems may have problems when learning to read, spell, and write.

2. **CPT 97533 May be Properly Billed in Multiple Units**

36.     According to the AMA, in using code 97533, the therapist assesses the patient's perception of sensation and determines the type of sensory treatment that would be most effective in treating the patient. CPT guidelines state that therapy is not considered to be a cure for sensory integrative impairments, but is used to facilitate the development of the nervous system's ability to process sensory input differently.

37.     As a result of there not being a specific cure of the condition, the code may be used repeatedly in order to assist the patient in helping him or her obtain the desired results. Sometimes the therapy may take longer than at other times and as a result, the AMA has built in a specified time increment of 15 minutes so that the therapist may correctly identify what was done and for how long. That being said, when using codes that have time increments, it is appropriate to report as many units of time as needed to correctly identify how long the provider spent with the patient providing treatment.

38.     For example, if a therapist spent 60 minutes with a patient providing sensory integrative services, to properly bill for these services (on the required Center for Medicare Studies ("CMS") claim form), the provider would place the CPT code number under the heading for "code" and then place the number 4 in the unit's column to indicate that the provider rendered four 15- minute increments of service (i.e., 60 minutes total).

39.     According to the AMA, a unit of time can be added once the mid-point of that time interval is passed. Put another way, once an additional 8 minutes is added to the next time increment (e.g., once 8 minutes is added to the original 15), it is appropriate (and mandated by the CPT book) to report the supplementary time with an additional unit when the time spent by the provider in face-to-face time exceeds 23 minutes (i.e., $15 + 8 = 23$). So for

24

example, if a therapist spent 40 minutes with the patient, looking at the time increment of 15 minutes, the provider would divide 15 minutes into the total time spent (in this case 40), yielding 2.66 units. This figure should be rounded up to the next whole number (i.e., 3), meaning that the provider should bill the insurance company 3 units for the service.

### 3. Counterclaimants have Correctly Billed CPT Code 97533 in Multiple Units

40. Applied to Counterclaimants' billing practices, SLC is permitted by the CPT to code for both the treatment of swallowing dysfunction (CPT code 92526) and the sensory integrative treatments (CPT code 92507). This is because each code includes a unique service that was provided to the patient. Neither of these codes has been placed on "pre-payment review" by Horizon.

41. The AMA defines 92526 as:

92526 Treatment of swallowing dysfunction and/or oral function for feeding

Examples of what is included in this code for treatment of swallowing dysfunction are services such as:

1. Helping the patient with their motor skills with reference to their ability to swallow;
2. Food presentation;
3. Complete swallow sip by sip;
4. Fast swallows;
5. Continuous drinking.

42. The services found in code 92526 and those described by the code 97533 (e.g., neuromuscular functioning, motor skills, posture, participation level, emotional status, positioning, etc.) are different and unique. While both services may occur on the same date, the services of 92526 and 97533 should not be bundled into one code. Additionally, while the 92526 code is not timed, time should be taken into account when placing all of the billing

25

information on the CMS claim form and the number of 15-minute increments used to provide the 97533 code should be listed in the "units" column.

43.   The same holds true for CPT code 92507.

The AMA defines the 92507 as:

92507 Treatment of speech, language, voice, communication, and/or auditory processing disorder; individual

In the treatment of the patient, various methods can be used which involve training the patient to perform such tasks, including without limitation:

1. Jaw depression, elevation, protrusion;
2. Lip rounding, spreading, opening and closing;
3. Tongue protrusion and retraction, elevation of tip, and blade;
   Tongue movements (lateral and circular).

44.   It is critical to note that the techniques used to treat speech and language disorders (92507) are different from those used in the sensory techniques (97533) for several reasons:

1. Not all patients who have speech, language, voice, communication and/or auditory issues also have sensory issues;
2. The methods used for patients who exhibit the need for sensory services include object exploration, sensory stimulation, squeezing, rubbing, slapping an object, etc.

45.   Consequently, it is highly inappropriate for a provider or an insurer such as Horizon to lump the two services together (or bundle) in one code and to believe that the bundled code correctly describes the services provided to the patient. The result will either describe one service or the other (depending on the code choice that was made) but it will never describe both. Lumping codes together like this is not, nor has it ever been, the intention of the AMA or CPT as each code describes something unique, different, and independent of the other and should be billed and paid for separately. Stated another way, when a patient

26

receives both sensory services as well as speech, language, voice, communication and/or auditory services **two separate codes should be used, billed, and paid for.**

### 4. CPT Code 97533 is Not "Similar" to Other Codes Placed on "Pre-Payment Review"

46.     Horizon erroneously contends that CPT code 97533 is "similar" to other codes Horizon placed on "pre-payment review."    As addressed above, 97533 is a distinct code, describing unrelated treatments rendered by SLC to its patients. These treatments can only be correctly reported and billed for by using the proper CPT code for each portion of the treatment provided.

47.     Short of Horizon having actually conducted a proper and fair audit of Counterclaimants' patient records, and then legitimately finding that Counterclaimants have specifically misused CPT code 97533 following a thorough investigation during which Counterclaimants would be permitted to challenge Horizon's findings, it is improper to now burden Counterclaimants to submit clinical records every time Counterclaimants bill CPT code 97533. Insurers, including Horizon, regularly process and pay for CPT code 97533 in the ordinary course without requiring clinical support. There is no plausible or legitimate reason why Horizon should depart from that objective claim adjudication practice now.

48.     Finally, because Counterclaimants regularly spend more than 15 minutes providing the sensory services to each patient, Counterclaimants have actually under billed for their 97533 services for several years. Consequently, subject to the contractual restrictions and applicable laws in the state of New Jersey, Counterclaimants intend to amend their claims retroactively to indicate the appropriate units of service that were rendered to their patients and seek additional payment accordingly.

27

## Irreparable Harm to Counterclaimants as a Result of Horizon's Conduct

49.    Horizon should be immediately compelled to perform under the parties' agreement.    First, Horizon should immediately pay all Horizon Claims and immediately administrate payment of all Blue Card Claims involving uncontested CPT codes.

50.    Second, Horizon should be enjoined from adding CPT code 97533 and any other codes to its "pre-payment review" pending a full hearing on the merits before this Court, where Counterclaimants may present fact and expert testimony and documentary evidence in support of their use of CPT Code 97533 and any other codes that Horizon has previously challenged or may in the future challenge, and have an opportunity to cross-examine any witness or evidence presented by Horizon.   Until such time as the Court may rule on this matter, the status quo should be maintained.

51.    Horizon should also be immediately enjoined from tortiously interfering with Counterclaimants' business and engaging in business libel designed to destroy Counterclaimants' business.

52.    By way of example, and without limitation, on the explanation of benefits sent by Horizon to Counterclaimants' patients, the patients were informed (or in the case of minor patients, their parents were informed) that payment for Counterclaimants' services were denied by "The Special Investigation Unit." In addition, upon information and belief, one or more representatives of Horizon have advised patient(s) who called to inquire as to why submitted claims were pended, that they "should consider going to another provider so that [their] claims would be paid." Further, other patients have advised Counterclaimants that Horizon told them that: (a) Ms. Marinos-Arsenis was being investigated for fraud; (b) Ms. Marinos-Arsenis was being investigated for billing fictitious dates of service; and (c) Ms.

Marinos-Arsenis' billing is inappropriate and fraudulent.     Horizon representatives also interrogated Counterclaimants' patients about whether they believed that Ms. Marinos-Arsenis was overcharging for the services she rendered.

53.     As a result of Horizon's refusal to properly perform under the parties' agreement and its interference in Counterclaimants' business and engagement in business libel, Counterclaimants have already lost a significant number of patients who have left the practice. Many of these patients had been under Counterclaimants' care for over 4 years. Horizon's actions have also caused a disruption of the medical professional-patient relationship and have caused irreparable harm to the patients, particularly when the patients, in many of these cases, belong to a vulnerable class and have a deep trust relationship with the medical professional because of the serious nature of their illnesses or medical needs

54.     The loss of patients represents a significant loss in revenue for the practice and to keep from shuttering its business, Counterclaimants' director Ms. Marinos-Arsenis has been compelled to take out a $300,000.00 business revolving line of credit from JP Morgan Chase Bank, N.A. (which is currently fully drawn), an equity loan in the amount of $240,000.00 from Ocwen Loan Servicing, LLC –Loan Number: 7129030057, and has had to borrow $58,000.00 from her son, Spyridon M. Arsenis, to pay for the day-to-day operating costs of Counterclaimants' practice.

55.     In addition, Counterclaimants have been forced to reduce the work hours for their office administrator from 4 days per week to 1 day per week and has only limited funds in its business bank account.

## COUNT I

## (BREACH OF CONTRACT)

56.     Defendants-Counterclaimants repeat and reallege the allegations heretofore pled.

57.     Horizon has refused to perform under the parties' provider agreement as described herein. Horizon's refusal to perform includes, but is not limited to its:  (a) refusal to make payment on Horizon Claims and to properly administrate Blue Card Claims; (b) refusal to pay for all of the CPT codes placed on "pre-payment review"; and (c) refusal to provide Counterclaimants a full and fair opportunity and due process to challenge Horizon's conclusions that various unaudited codes, including but not limited to CPT code 97533, should be placed on "pre-payment review."

58.     Horizon's actions as described herein constitute a breach of its provider agreement with Counterclaimants and as a result Counterclaimants have suffered significant damages.

WHEREFORE, Counterclaimants Speech & Language Center, LLC and Chryssoula Marinos-Arsenis demand judgment against Counterclaim-Defendant Horizon Blue Cross Blue Shield of New Jersey, for:

(a)     Damages and interest;

(b)     Injunctive relief;

(c)     Costs of suit;

(d)     Attorneys' fees and;

(e)     Such other relief as the Court deems equitable and just.

30

## COUNT II

## (BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING)

59.   Defendants-Counterclaimants repeat and reallege the allegations heretofore pled.

60.   Implied in the contractual relationship between Counterclaimants and Horizon is a covenant of good faith and fair dealing.

61.   Horizon's breach of contract through acts of commission and omission as described herein was wrongful and without justification.

## COUNT III

## (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

62.   Defendants-Counterclaimants repeat and reallege the allegations heretofore pled.

63.   Counterclaimants' patients are third-parties, and are not parties to the contractual relationship between Horizon and Counterclaimants.

64.   As a language and speech pathologist, Ms. Marinos-Arsenis has developed close relationships with her patients, mostly children with some type of disability, who currently treat with and intended to continue to treat with Counterclaimants but for the tortious interference of Horizon.   Many of these patients have sensory issues and thus adjustment to new and different environments, doctors, and other medical providers is not in the best interests of the care of these patients.

65.   Counterclaimants have treated and continue to treat their patients in connection with their business and with the reasonable expectation of economic advantage and thus payment for their services.

31

66. Shockingly, however, on the explanation of benefits sent to Counterclaimants' patients by Horizon, the patients were informed that payment to Counterclaimants was being denied by "The Special Investigation Unit." Furthermore, in response to at least one inquiry from a patient questioning why claims submitted by Counterclaimants were not being paid, a Horizon representative replied that the patient "should consider going to another provider so that [the patient's] claims would be paid."

67. Other patients have informed Ms. Marinos-Arsenis that Horizon: (a) told the patients that Counterclaimants were being investigated for fraud; (b) asked the patients if they believed Counterclaimants were overcharging for their services; (c) told the patients that Counterclaimants were being investigated for billing fictitious dates of service; and (d) told the patients that Counterclaimants' billing is inappropriate and fraudulent.

68. A substantial number of patients have since left the practice and found other providers for their speech and language services. Due to the nature of the therapist-patient relationship, it is unlikely these patients will return to Counterclaimants for treatment once this matter is concluded, and consequently have permanently severed their relationship with Counterclaimants.

69. Horizon's conduct and statements, as described herein, is intentional and malicious, and designed to inflict harm upon Counterclaimants. These statements were made without justification or excuse and have interfered with Counterclaimants' pursuit of a prospective economic gain.

70. In so acting, Horizon has deprived Counterclaimants of their reasonable expectation of economic advantage. Horizon's tortious conduct has caused and will continue to cause the loss of prospective gain to Counterclaimants.

32

71.     As a direct result of Horizon's tortious interference with the prospective economic advantage of Counterclaimants, Counterclaimants have suffered significant economic damages.

WHEREFORE, Counterclaimants Speech & Language Center, LLC and Chryssoula Marinos-Arsenis demand judgment against Counterclaim-Defendant Horizon Blue Cross Blue Shield of New Jersey, for:

(a)     Damages and interest;

(b)     Punitive Damages;

(c)     Injunctive relief;

(d)     Costs of suit;

(e)     Attorneys' fees and;

(f)     Such other relief as the Court deems equitable and just.

## COUNT IV

## (BUSINESS LIBEL)

72.     Defendants-Counterclaimants repeat and reallege the allegations heretofore pled.

73.     Horizon has published to Counterclaimants' patients and their parents, several statements that are derogatory, vicious, and harmful to Counterclaimants' business for the designed purpose of destroying Counterclaimants' business and preventing the patients from treating with Counterclaimants. These statements to third-parties published on explanations of benefits and made in direct oral communications with Counterclaimants' patients (or their parents) were and are designed to prevent patients from continuing to treat with Counterclaimants, tarnish Counterclaimants' reputation, and ruin Counterclaimants' business.

33

Horizon also intended that these published derogatory statements and falsehoods induce Counterclaimants' patients to leave the practice.

74. As a direct result of the libelous statements made by Horizon, Counterclaimants' patients have sought out other providers and left the practice, causing Counterclaimants to lose patients and the current and future compensation their treatment brought and would bring to the practice.

75. Counterclaimants have suffered significant economic damages as a result of Horizon's business libel.

WHEREFORE, Counterclaimants Speech & Language Center, LLC and Chryssoula Marinos-Arsenis demand judgment against Counterclaim-Defendant Horizon Blue Cross Blue Shield of New Jersey, for:

(a) Damages and interest;

(b) Punitive Damages;

(c) Injunctive relief;

(d) Costs of suit;

(e) Attorneys' fees and;

(f) Such other relief as the Court deems equitable and just.

## CERTIFICATION PURSUANT TO RULE 4:5-1(b)(2)

ERIC D. KATZ, of full age, hereby certifies that:

1. I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for the Defendants-Counterclaimants in this action.

2. To the best of my knowledge, the matter in controversy is not the subject of any other action now pending in any Court or any pending arbitration proceeding.

3.     No other actions or arbitration proceedings are contemplated by Defendants-Counterclaimants against Horizon Blue Cross Blue Shield of New Jersey.

4.     I know of no other parties that should be joined in this action at this time.

I certify that the foregoing statements made by me are true. I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Defendants-Counterclaimants

By:_____
ERIC D. KATZ

Dated: April 10, 2015

35

## DESIGNATION OF TRIAL COUNSEL

Defendants-Counterclaimants hereby designate Eric D. Katz, Esq. as trial counsel in the above matter.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Defendants-Counterclaimants

By:_____
ERIC D. KATZ

Dated:  April 10, 2015

## DEMAND FOR JURY TRIAL

Defendants-Counterclaimants hereby request a jury trial on all issues so triable.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Defendants-Counterclaimants

By:_____
ERIC D. KATZ

Dated:  April 10, 2015

**Exhibit 2**

**Disposition Order dated August 30, 2019**

AETNA HEALTH INC, ET AL

*PLAINTIFF*

V.

SPEECH & LANGUAGE CENTER LLC, ET AL

*DEFENDANT*

**Superior Court of New Jersey**
**Law Division - Civil Part**
Somerset County Civil Divison
P.O. Box 3000, Somerville, NJ 08
(908) 332-7700; Ext 13710

**CIVIL ACTION**
**ORDER OF DISPOSITION**

DOCKET NO.                L-281-15

It is on this ___30th___ day of ___August, 2019___ , **ORDERED** that this matter is hereby dismissed/d
due to the following:

| | | |
|---|---|---|
| ☐ 04 Partially Tried | ☐ 25 Settled - While Scheduled for Arbitration | |
| ☐ 05 Tried to Completion w/ Jury | ☐ 26 Settled - While Scheduled for other CDR | |
| ☐ 07 Tried to Completion w/out Jury | ☐ 27 Settled - Friendly Hearing Comp | |
| ☐ 08 Default Judgment | ☐ 28 Settled by other CDR | |
| ☐ 09 Summary Judgment | ☒ 29 Settled by Conference with Judge | |
| ☐ 10 Dismissed with Prejudice | ☐ 45 Inactived | |
| ☐ 11 Dismissed Rule 1:13 | ☐ 82 Default Judgment; Proof Hearing Complete | |
| ☐ 12 Dismissed without Prejudice | ☐ Plaintiff Atty. Failed to Appear; Dismissed by ( | |
| ☐ 14 Transfer to Another County | ☐ Plaintiff Failed to Appear; Dismissed by Court | |
| ☐ 15 Transfer to Another Court | ☐ Defendant Failed to Appear; Default Entered b | |
| ☐ 17 Settled by Arbitration/50 Day Dismissal | ☐ Plaintiff and Defendant Failed to Appear; Dism by Court | |
| ☐ 23 Settled - Not Scheduled for Trial | | |
| ☒ 24 Settled- While Scheduled for Trial | ☒ Other (see comments) | |

It is further **ORDERED** that the plaintiff/defendant shall serve a copy of the ORDER on the plaintiff/defe
within ___seven (7)___ days from the above date.

**COMMENTS:**

Terms of settlement placed on the record under seal on 8/30/19.

**/S/ THOMAS C. MILLER, P.J.Cv.**

Thomas C. Miller, P.J.Cv.

**Exhibit 3**

**Motion for Standing and Subject Matter Jurisdiction**

**Order Denied**

**Speech and Language Center, L.L.C and Chryssoula Marinos-Arsenis during the course of this hotly contented complaint and based in understanding and belief moved to dismiss the complaint in its entirety on the ground that Horizon lacked standing because it is just the administrator of the different plans such as ERISA, BLUE CARDS,SELF-FUNDED, STATE EMPLOYEE FUND. (CA67) confirmed by the physician director of the previous administration. The trial court denied the motion, and the Appellant Division denied to grant the motion for leave to appeal rendering the said hotly disputed issue without a conclusive resolution to the matter of Horizon's standing. Furthermore, common law fraud, negligent misrepresentation and unjust enrichment claims implicating ERISA member plans for lack of Subject Matter Jurisdiction and IFPA claim implicating Self-funded ERISA member plans have lack of Subject Matter Jurisdiction.**

Peter Katz, Esq.
**CALCAGNI & KANEFSKY LLP**
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
(T) 862-235-1655
(F) 862-902-5458
pkatz@ck-litigation.com
*Attorneys for Defendants*
*Speech & Language Center, LLC and*
*Chryssoula Marinos-Arsenis*

| | |
|---|---|
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, <br><br> Plaintiff, <br><br> v. <br><br> SPEECH & LANGUAGE CENTER, LLC; CHRYSSOULA MARINOS-ARSENIS; JOHN DOES 1-10; AND ABC CORPORATIONS 1-10 <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY <br><br> DOCKET NO. SOM-L-281-15 <br><br> Civil Action |

---

**BRIEF IN SUPPORT OF MOTION TO DIMISS FOR LACK OF STANDING AND LACK OF SUBJECT MATTER JURISDICTION**

---

2

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................... 1

STATEMENT OF MATERIAL FACTS ....................................................................................... 2

ARGUMENT..................................................................................................................................... 3

I.    Horizon's Claims Related to Self-Funded Horizon Members Must Be Dismissed
      Because Horizon Has Not Demonstrated Damages Sufficient to Confer it Standing
      Under the Common Law or the IFPA................................................................................. 3

      A.    Horizon Does Not Have Standing to Bring Claims Related to the New Jersey
            State Health Benefits Program................................................................................... 4

      B.    Horizon Does Not Have Standing to Bring Claims Related to the Federal
            Employees Health Benefits Program .......................................................................... 7

      C.    Horizon Does Not Have Standing to Bring Claims Related to Other Blue Cross
            Blue Shield Insurance Carriers ................................................................................. 8

      D.    Horizon Does Not Have Statutory Standing to Bring its Claims Related to the
            SHBP and/or the FEHB Under the New Jersey Insurance Fraud Prevention
            Act.................................................................................................................................. 9

      E.    Horizon Cannot Establish Standing by Exclusively Relying on Third Party
            Rights............................................................................................................................ 10

II.   The Court Does Not Have Subject Matter Jurisdiction Over Horizon's Common Law
      Fraud, Unjust Enrichment, and Negligent Misrepresentation Claims Related to Any
      ERISA Plans and Horizon's IFPA Claim Related to Self-Funded ERISA Plans............. 12

CONCLUSION................................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**CASES**

Allstate New Jersey Ins. Co. v. Lajara, 222 N.J. 129, 143-44 (2015) ............................................. 9

Bd. of Trs. of Operating Engineers Local 825 Fund Service Facilities v. L.B.S. Const.,
148 N.J. 561 (1997) .................................................................................................................. 12, 13

Beaver v. Magellan Health Services, Inc., 433 N.J. Super. 430 (App. Div. 2013) ........................ 5

Burley v. Prudential Ins. Co. of America, 251 N.J. Super. 493 (1991) .......................................... 5

Cherokee LCP Land, LLC v. City of Linden Planning Bd., 234 N.J. 403 (2018).......................... 3

Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98 (1971) ....................... 4

EnviroFinance Grp., LLC v. Envt'l Barrier Co., LLC, 440 N.J. Super. 325 (App. Div. 2015) ..... 3

Finderne Management Co., Inc. v. Barrett, 355 N.J. Super. 170, 185, 188 (App. Div. 2002) ..... 13

FMC Corp. v. Holliday, 498 U.S. 52 (1990) ................................................................................ 14

Goldman v. Critter Control of N.J., 454 N.J. Super. 418 (App. Div. 2018)................................. 10

In re Adoption of Baby T, 160 N.J. 332 (1999)........................................................................... 3, 4

In re LymeCare, Inc., 301 B.R. 662 (D.N.J. 2003)........................................................................ 6

James v. Arms Tech., Inc., 359 N.J. Super. 291 (App. Div. 2003) .............................................. 10

Jersey Shore Medical Ctr. v. Estate of Baum, 84 N.J. 137, 144 (1980) .................................. 4, 10

Kindred Hospitals East, LLC v. Horizon Healthcare Services, Inc., 2019 WL 643604
(D.N.J. 2019).................................................................................................................................. 5

Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 172 (2006) ............................................................ 14

Macysyn v. Hensler, 329 N.J. Super. 476 (App. Div. 2000) ........................................................ 12

Matter of Quinlan, 70 N.J. 10 (1976)............................................................................................. 3

N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409-10 (App. Div. 1997)......... 4

Nolan v. Otis Elevator Co., 102 N.J. 30 (1986)...................................................................... 12, 13

Royster v. N.J. State Police, 439 N.J. Super. 554 (App. Div. 2015) ............................................ 12

St. Peter's Univ. Hosp. v. N.J. Bldg. Laborers Statewide Welfare Fund, 431 N.J. Super.
446 (App. Div. 2013) ................................................................................................................ 12, 14

State v. Osborn, 32 N.J. 117 (1960) ............................................................................................ 11

Triffen v. Somerset Valley Bank, 343 N.J. Super. 73 (App. Div. 2001) ...................................... 3

Whirlpool Properties, Inc. v. Director, Div. of Taxation, 2013 WL 5781739
(Tax Oct. 22, 2013) ......................................................................................................................... 3

White Consol. Industries, Inc. v. Lin, 372 N.J. Super. 480 (App. Div. 2004) ...................... 13, 14

**STATUTES**

29 U.S.C. 1144(a) ......................................................................................................................... 13

5 U.S.C. § 8902 ........................................................................................................................... 6, 7

N.J.S.A. 17:33A-1 .......................................................................................................................... 9

N.J.S.A. 17:33A-7 .......................................................................................................................... 9

N.J.S.A. 52:14-17.25 ...................................................................................................................... 4

N.J.S.A. 52:14-17.27 ...................................................................................................................... 4

N.J.S.A. 52:14-17.28 ...................................................................................................................... 4

N.J.S.A. 52:14-17.30 ................................................................................................................... 4, 5

**OTHER AUTHORITIES**

Horizon, BlueCard Program FAQs, https://www.horizonblue.com/providers/products-
programs/bluecard-r-program/bluecard-program-faqs (last visited Apr 9, 2019) ...................... 8

STATE OF NEW JERSEY DEPARTMENT OF THE TREASURY DIVISION OF PENSIONS & BENEFITS, NJ
DIRECT MEMBER GUIDEBOOK (2019) ........................................................................................... 4

**RULES**

Rule 4:26-1 .................................................................................................................................... 3

Rule 4:6-3 ..................................................................................................................................... 12

Rule 4:6-7 ..................................................................................................................................... 12

## PRELIMINARY STATEMENT

Plaintiff Horizon Blue Cross Blue Shield of NJ ("Horizon") is a State and Federal contracted administrator of the New Jersey State Health Benefits Plan (the "SHBP") and the United States Federal Employees Health Benefits Program (the "FEHB"). In its capacity as an administrator – and not the insurer – of those publicly-funded programs, Horizon processes and pays member claims on behalf of the State and Federal governments using government funds that are held in government treasuries. Pursuant to this arrangement, Horizon assumes no financial obligation or risk related to the payment of medical claims, and instead, receives a substantial fee in exchange for its services.

Despite the indisputable fact that Horizon bears no risk of financial loss – and actually receives a monetary benefit – in acting as an administrator of the SHBP and FEHB, Horizon improperly relies on SHBP and FEHB member claims to assert broad allegations and well over $4 million in damages against Speech and Language Center, LLC and Chryssoula Marinos-Arsenis (collectively, "SLC"). But as New Jersey law makes clear, without having itself suffered damages from SLC's purported inappropriate submission of SHBP- and FEHB-related insurance claims, Horizon lacks standing to pursue any allegations related to member claims under those programs.

In similar vein, Horizon, as an intermediary between out-of-state Horizon BlueCard Program members and other independent Blue Cross Blue Shield companies, similarly lacks standing to seek damages related to out-of-state BlueCard Program member claims. And, because the Employee Retirement Income Security Act ("ERISA") categorically preempts the New Jersey Insurance Fraud Protection Act ("IFPA") with respect to self-funded ERISA claims,

Like its claims related to the SHBP, Horizon's FEHB claims are barred because it cannot establish any stake in the outcome of its allegations related to those claims or harm it may suffer as a result. In its capacity as an administrator of the FEHB only, Horizon is shielded from any financial risks inherent in an insurer's paying of medical claims. Indeed, just like it does from the State, Horizon collects a fee for its services in administering the FEHB on behalf of OPM. Ibid. And, the statute charges OPM – not Horizon – to determine whether a health care provider or agency should be subject to civil penalties, debarment, or other sanctions, and the Attorney General of the United States to bring forth a civil action in the relevant United States district court for civil monetary penalties. See 5 U.S.C. §§ 8902a(b)-(g), (i). Any amounts recovered through such an action must be paid to OPM "for deposit into the Employees Health Benefits Fund." § 8902a(i). So, because Horizon has nothing to gain or lose in the outcome of its FEHB-related claims, it lacks standing to pursue allegations related to those claims through this lawsuit.

### C.  Horizon Does Not Have Standing to Bring Claims Related to Other Blue Cross Blue Shield Insurance Carriers.

In addition to the SHBP and the FEHB, Horizon lacks standing to bring claims related to member claims of other independent Blue Cross Blue Shield insurance carriers. Horizon is part of a "BlueCard Program" that "links participating health care providers and independent Blue Cross Blue Shield plans across the country and abroad with a single electronic network for claims processing and reimbursement." Horizon, *BlueCard Program FAQs*, https://www.horizonblue.com/providers/products-programs/bluecard-r-program/bluecard-program-faqs (last visited Apr 9, 2019). Pursuant to this program, Horizon "electronically route[s]" submitted claims "to the out-of-state Blue Cross Blue Shield Plan that . . . process[es] the claim according to each member's contract." Ibid. According to Horizon, "the payment of

8

[such] claims does not come from Horizon's funds . . . . [T]he funds come from the other Blue Cross Blue Shield Company." Plaintiff's Brief in Support of Motion for Summary Judgment (Mar. 29, 2018) at 40 (citing Johnson Dec., ¶¶ 44-48); see also ibid. ("[R]elief can only come from the health insurance companies responsible for providing benefits to the . . . BlueCard members.").

Again, Horizon has no stake in the outcome of disputes related to claims to which it has no financial obligation. Because it merely acts as the intermediary between out-of-state members and those members' (non-Horizon BCBSNJ) Blue Cross Blue Shield plans, Horizon suffers no loss or damages in connection with the processing and payment of out-of-state BlueCard Program claims. In asserting that Horizon is not the proper defendant to SLC's counterclaims for payment of SLC's BlueCard Program member claims, Horizon implicitly conceded the inverse: it is not the proper plaintiff to bring claims for damages related to other BlueCard Program member plans. So, because Horizon cannot claim damages from those claims and will suffer no harm as a result of an unfavorable decision in this matter with respect to those claims, it must be barred from relying on those claims for lack of standing.

## D. Horizon Does Not Have Statutory Standing to Bring its Claims Related to the SHBP and/or the FEHB Under the New Jersey Insurance Fraud Prevention Act.

Even if Horizon could meet New Jersey's pleading requirements – which it cannot – it nonetheless cannot rely on SHBP- and FEHB-related claims to assert allegations under the New Jersey Fraud Prevention Act, ("IFPA"), N.J.S.A. 17:33A-1 et seq., because it has not suffered any damages. See Pl. Compl., Count I.

The IFPA "authorizes two separate causes of action to enforce the statutory scheme—one a State action brought by the Commissioner of Banking an Insurance . . . and the other a private

9

civil action brought by insurers 'damaged as a result of a violation of any provision of [the IFPA].'' Allstate New Jersey Ins. Co. v. Lajara, 222 N.J. 129, 143-44 (2015) (emphasis added) (alterations in original) (quoting N.J.S.A. 17:33A-7(b)).   Whether an insurance carrier has suffered damages as a result of an IFPA violation is a necessary element to a private IFPA action. Id. at 148 (explaining that an insurance company asserting an IFPA claim must prove that it was damaged). Recovery under the IFPA for insurance carriers is thus expressly limited to only those damaged as a result of an IFPA violation. See N.J.S.A. 17:33A-7.

Here, Horizon has not – because it cannot – suffer damages in connection with SLC's alleged submission of false SHBP and FEHB insurance claims.   As set forth in detail above, the State and the Federal Government, as the insurers of the SHBP and the FEHB, exclusively shoulder the burden of financial risk in administering those plans. Horizon, acting solely as the administrator, did not suffer any losses in processing and paying any SHBP or FEHB claims submitted by SLC.  Because the IFPA expressly provides that only those insurance carriers that have suffered damages from a violation can bring a private civil action under the act, see Lajara, 222 N.J. at 143-44, Horizon lacks standing under the IFPA to bring any allegations related to SLC's purported submission of false SHBP and FEHB member claims.   The Court should therefore dismiss Count One as it improperly relies on those claims to allege purported violations under the IFPA.

## E.   Horizon Cannot Establish Standing by Exclusively Relying on Third Party Rights.

New Jersey case law makes clear that litigants cannot piggyback off of the rights of a third party to establish standing. Jersey Shore Medical Ctr., 84 N.J. at 144; Bondi, 423 N.J. Super. at 436; James v. Arms Tech., Inc., 359 N.J. Super. 291, 321 (App. Div. 2003).  Indeed, only those litigants that "can show sufficient personal stake and adverseness" can "assert the

10

rights of third parties." See Goldman v. Critter Control of N.J., 454 N.J. Super. 418, 424 (App. Div. 2018) (quoting Estate of F.W. v. State of N.J., Div. of Youth and Family Servs., 398 N.J. Super. 344, 353 (App. Div. 2008)). Otherwise, a court's decision will amount to nothing more than an advisory opinion. See ibid.

In Goldman, the Appellate Division consolidated two cases to determine whether the trial court erred in dismissing the complaints filed by the same plaintiff for lack of standing. 454 N.J. Super. at 420-21. The plaintiff, the former chief humane law enforcement officer for the Monmouth County Society for the Prevention of Cruelty to Animals ("Monmouth SPCA") and trustee for two non-profit animal welfare organizations, filed an action under the Prevention of Cruelty to Animals Act ("PCAA"), N.J.S.A. 4:22-11.1 to –60, against the defendants, alleging animal cruelty and seeking damages and civil penalties. Ibid. Although the PCAA provided that a violator must "forfeit and pay a sum . . . to be sued for and recovered . . . in a civil action by *any person in the name of the New Jersey Society for the Prevention of Cruelty to Animals*. . .," the appellate panel found that statute neither permitted the plaintiff to file suit in his individual capacity nor authorized the filing of qui tam lawsuits. Id. 424-431. The panel noted that the plaintiff "did not claim to own, control or have any financial interest in any of the animals involved," and therefore, lacked standing to sue in one of the consolidated actions. Id. at 424.

Similarly here, Horizon lacks standing to assert the rights of the State and OPM because it does not have any ownership, control or interest in the SHBP and FEHB claims and the statutes do not authorize Horizon to sue practitioners on behalf of the government entities. *First*, for the reasons detailed above, Horizon lacks ownership over and an interest in the SHBP and FEHB claims because it acts simply as the administrator of the programs, having no financial obligation with respect to those claims. The State and OPM have full ownership and

11

responsibility over member claims and, in funding the claims from the State and Federal treasuries, assume the risk of financial loss. *Second*, though Horizon has control over SHBP and FEHB claims as the programs' administrator, it no longer has control over the claims on which it relies for its allegations against SLC because Horizon has already paid for or denied those claims. Even so, like the individual plaintiff in Goldman, Horizon has no statutory authority to file a lawsuit on behalf of either the State or OPM to recover on those claims. Both the state and federal statutes are entirely devoid of provisions authorizing such lawsuits.

In addition, Horizon lacks standing to assert the rights of other independent Blue Cross Blue Shield plans. Through the BlueCard Program, Horizon acts essentially as an intermediary between out-of-state BlueCard members and independent Blue Cross Blue Shield plans with which they have contracted. Horizon lacks control over how those claims are processed and paid, and it is those companies that are responsible for providing member benefits. See Pl. Brief in Support of Motion for Summary Judgment (Mar. 28, 2018) at 40-41. And, because Horizon does not fund those claims directly, it has no ownership or interest in those claims.

For these and the foregoing reasons, the Court should dismiss Horizon's allegations related to SHBP, FEHB, and out-of-state BlueCard Program member claims for lack of standing.

## II.    The Court Does Not Have Subject Matter Jurisdiction Over Horizon's Common Law Fraud, Unjust Enrichment, and Negligent Misrepresentation Claims Related to Any ERISA Plans and Horizon's IFPA Claim Related to Self-Funded ERISA Plans.

Subject matter jurisdiction "is the power of a court to hear and determine cases of the class to which the proceeding in question belong." State v. Osborn, 32 N.J. 117, 122 (1960). Under New Jersey law, a court may dismiss an action for lack of subject matter jurisdiction at any time. R. 4:6-3; R. 4:6-7; see Royster v. N.J. State Police, 439 N.J. Super. 554 (App. Div.

12

2015) ("Subject matter jurisdiction can[not] . . . be . . . waived as a defense, and a court must dismiss the matter if it determines that it lacks subject matter jurisdiction."); Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div. 2000) (indicating that a motion for lack of subject matter jurisdiction can be made "at any time"). If the court finds that it lacks subject matter jurisdiction over the case, it must dismiss the matter, or transfer it pursuant to Rule 1:13-4. R. 4:6-7.

Horizon's common law claims relating to ERISA member plans and its IFPA claim relating to self-funded ERISA member plans must be dismissed because the court lacks subject matter jurisdiction to hear claims implicating those plans.

ERISA contains "a sweeping preemption provision" that "preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [covered by ERISA.]'" Bd. of Trs. of Operating Engineers Local 825 Fund Service Facilities v. L.B.S. Const., 148 N.J. 561, 566 (1997) (quoting 29 U.S.C. § 1144(a)); Nolan v. Otis Elevator Co., 102 N.J. 30, 38 (1986) ("[ERISA] includes one of the most sweeping preemption provisions ever contained in any federal program.").[2] "A state law claim relates to an employee benefit plan if 'the existence of an ERISA plan [is] a critical factor in establishing liability' and 'the trial court's inquiry would be directed to the plan.'" St. Peter's Univ. Hosp. v. N.J. Bldg. Laborers Statewide Welfare Fund, 431 N.J. Super. 446, 456 (App. Div. 2013) (quoting 1975 Salaried Ret. Plan for Eligible Emps. Of Crucible, Inc. v. Nobers, 968 F.2d 401, 406 (3d Cir. 1993)).

Given the breadth of ERISA's preemption provision, New Jersey courts have "interpreted the . . . provision to give full effect to ERISA's purposes." id. at 566-67. For example, ERISA preempts state laws that "ha[ve] a connection with or reference[ ] to an employee benefit plan," and also "state common law claims." See Finderne Management Co., Inc. v. Barrett, 355 N.J.

---

[2] ERISA also contains a "complete" preemption provision, which preempts "any state-law cause of action that duplicates, supplements, or supplants the civil enforcement remedy" under Section 502(a). Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004).

13

Super. 170, 185, 188 (App. Div. 2002); St. Peter's Univ. Hosp., 431 N.J. Super. at 461 (finding that the plaintiff's breach of contract and unjust enrichment claims are preempted by ERISA). In addition, in many instances, ERISA preempts "state laws covering subject matters beyond those covered by ERISA" and "even when those laws are not specifically designed to affected ERISA-covered plans or affects them indirectly." See L.B.S. Const., 148 N.J. at 566.

ERISA excepts from preemption "state laws regulating insurance, banking and securities" (the "Savings Clause"). Nolan, 102 N.J. at 39 (citing 29 U.S.C. 1144(b)(2)(A)). However, the Savings Clause applies only to fully-funded ERISA plans; self-funded plans are exempt from state laws regulating insurance through ERISA's "Deemer Clause." White Consol. Industries, Inc. v. Lin, 372 N.J. Super. 480, 484 (App. Div. 2004) (explaining that the Savings Clause "saves" insured employee benefit plans from general ERISA preemption, while the Deemer Clause exempts self-insured plans from state insurance laws because "a self-insured ERISA plans is "not 'deemed' an insurance company"). Self-funded ERISA plans are thus not subject to New Jersey's insurance laws and regulations, including the IFPA.

In light of the foregoing established principles, the Court does not have subject matter jurisdiction over: (i) Horizon's state common law fraud, negligent misrepresentation, and unjust enrichment claims as they relate to any ERISA member plan; or (ii) Horizon's IFPA claim as it relates to self-funded ERISA plans. *First*, Horizon's common law fraud, negligent misrepresentation, and unjust enrichment claims are preempted by ERISA because ERISA member plans are central to those claims. See 29 U.S.C. 1144(a). In proving its common law claims, Horizon will be required to rely on ERISA member plans to establish SLC's purported liability because it had relied on those plans to pay or deny SLC's claims submissions. In other words, but for the existence of ERISA member plans, Horizon would be unable to assert

14

|  | SUPERIOR COURT OF NEW JERSEY |
|---|---|

HORIZON BLUE CROSS BLUE SHIELD
OF NEW JERSEY,

Plaintiff,

v.

SPEECH & LANGUAGE CENTER, LLC;
CHRYSSOULA MARINOS-ARSENIS;
JOHN DOES 1-10; AND ABC
CORPORATIONS 1-10

Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: SOMERSET COUNTY

DOCKET NO. SOM-L-281-15

Civil Action

**ORDER**

**THIS MATTER** having been brought before the Court by way of Motion to Dismiss filed
by Defendants Speech & Language Center, LLC and Chryssoula Marinos-Arsenis (collectively,
"Defendants"); and the Court having considered all papers submitted in connection with this
motion; and oral argument having been heard; and good cause having been shown.

**IT IS** on this __10th__ day of ___June___, 2019

**ORDERED** as follows:

1.  Defendants' motion to dismiss Plaintiff's claims regarding member claims of the
State Health Benefits Program, the Federal Employee Health Benefits Program, other Blue Cross
Blue Shield insurance carriers, and ERISA is hereby **DENIED.**

2.  A copy of this Order shall be served on all counsel of record within ten (10) days
of receipt thereof.

# OPPOSED

__/S/ MICHAEL J. ROGERS, J.S.C.__
Hon. Michael J. Rogers, J.S.C.

# SEE ATTACHED STATEMENT OF REASONS

Plaintiff Horizon asserts that from at least 2009 defendants entered into a scheme to defraud plaintiffs and submitted insurance claims and statements for services which contained knowing false and misleading statements, misrepresented the services performed, misrepresented the patients' actual diagnoses, and failed to disclose information which affected defendants' right to payment in violation of the New Jersey Insurance Fraud Prevention Act and common law fraud.

Plaintiff BCBSNJ, on its own behalf, notified defendants of the overpayments and requested repayment.

Defendants' Motions

Defendants seek to dismiss plaintiff's claims regarding member claims of the State Health Benefits Program (SHBP), the Federal Employee Health Benefits Program (FEHB), and other Blue Cross Blue Shield Carriers for lack of standing and subject matter jurisdiction.

Horizon is a health services corporation in New Jersey and provides benefits for plans that it insures at its own risk, serves as the sponsor of its own plan for Horizon employees, and acts as a third-party administrator for self-insured benefit plans. Horizon alleges that defendants submitted false and fraudulent insurance claims to Horizon for speech testing and therapy services.

Defendants move to dismiss essentially arguing that because Horizon bears no risk of financial loss it has an insufficient stake in this fraud controversy to confer standing. Defendants argue that because Horizon administers the health plans but does not pay the claims, Horizon does not have standing. Further, defendants contend that the Employee Retirement Income Security Act (ERISA) preempts the New Jersey Insurance Fraud Prevention Act (IFPA) and divests this court of subject matter jurisdiction insofar as those claims are concerned.

The concept of standing "refers to the plaintiff's ability or entitlement to maintain an action before the court." In re Adoption of Baby T., 160 N.J. 332, 340 (1999). "To have standing, the

3

(1) [p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or (2) [p]repares or makes any written or oral statement that is intended to be presented to any insurance company . . . in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or (3) [c]onceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled.

[N.J.S.A. 17:33A-4(a)(1), (2), (3)].

The IFPA authorizes two separate causes of action to enforce the statutory scheme -- one a state action brought by the Commissioner of Banking and Insurance, N.J.S.A. 17:33A-5, and the other a private civil action brought by insurers "damaged as the result of a violation of any provision of [the IFPA]," N.J.S.A. 17:33A-7.

Under the IFPA, "[a]ny insurance company damaged as the result of a violation of [the Act] may sue . . . to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees." N.J.S.A. 17:33A-7(a).

Horizon has every right to pursue its claims under the IFPA and common law fraud allegations. If true, defendants' fraudulent submission of claims damaged Horizon, the plans themselves and the general public.

Defendants' motion is filed under R. 4:6-2(e). The court's role is to examine the legal sufficiency of the facts alleged on the face of the complaint. See Rieder v. Department of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987). The test for determining the adequacy of a pleading is whether a cause of action is suggested by the facts. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988). On motion made pursuant to R. 4:6-2(e), the inquiry is confined to a consideration of the legal sufficiency of the alleged facts apparent on the face of the challenged

5

Center, 623 F.Supp. 568, 575 (D.N.J. 2009). ERISA does not preempt a state law tort cause of action in this context. State law insurance fraud remedies are separate and distinct from available remedies under ERISA. See, e.g., Geller v. County Line Auto Sales, 86 F.3d 18, 23 (1996).

Accordingly, defendants' motion to dismiss plaintiff's common law claims is denied.

Plaintiff's Cross-Motion to Dismiss Defendants' Counterclaim

Plaintiff previously moved for summary judgment and dismissal of defendants' counterclaim. Judge Ballard denied the motion by order dated June 8, 2018. The court finds this order to be dispositive of this issue at this point in time and denies plaintiff's motion. The court also notes that Judge Ballard ordered that the factual and legal sufficiency of defendants' counterclaims be vetted at a N.J.R.E. 104(a) hearing prior to trial.

Accordingly, plaintiff's motion to dismiss defendants' counterclaim is denied.

Plaintiff's Cross-Motion to Amend Complaint to Conform to Discovery

Plaintiff seeks leave to amend its complaint to conform to the evidence pursuant to R. 4:9-2. This rule provides:

> When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order. Such amendment of the pleadings and pretrial order as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend shall not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings and pretrial order, the court may allow the pleadings and pretrial order to be amended and shall do so freely when the presentation of the merits of the action will be thereby subserved and the objecting party fails to satisfy the court that the admission of such evidence would be prejudicial in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

R. 4:9-1 provides:

7

> A party may amend any pleading as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is to be served, and the action has not been placed upon the trial calendar, at any time within 90 days after it is served. Thereafter a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice. A motion for leave to amend shall have annexed thereto a copy of the proposed amended pleading. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 20 days after service of the amended pleading, whichever period is longer, unless the court otherwise orders.

Defendants object on the grounds that the allegations Horizon seeks to introduce do not conform to the evidence and constitute an attempt to expand its claims in an effort to confer standing.

The court denies plaintiff's motion at this late stage in the proceeding. The case will be five years old in September 2019. Horizon's pathway to incorporate additional allegations must be accomplished during trial on notice to defendants in accordance with the rule.

Accordingly, plaintiff's motion to amend the complaint is denied.

United States District
Court

District of New Jersey.
50 Walnut St.
No. 4015 Newark, NJ 07102.